STATE of Missouri,
Plaintiff–Respondent,

v.

Janice PILOUSEK,
Defendant–Appellant.

No. 52759.

Missouri Court of Appeals,
Eastern District,
Division Three.

March 29, 1988.

Marsha Brady, Hillsboro, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth Levin Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SMITH, Judge.

Defendant appeals from her conviction by a jury of two counts of stealing without consent and one count of forgery. She was given a sentence of six months concurrent jail time and $1000 fine on each count. The execution of the sentence was suspended and defendant was placed on five years probation conditioned upon 120 hours community service and restitution of $1,200 to Jefferson County.

Defendant raises four issues on appeal. One involves a challenge to the sufficiency of the evidence to support the convictions but only as that evidence relates to the ownership of the funds stolen. Defendant was an employee in the office of the assessor of Jefferson County. She began working for the assessor, Oscar Kasten, in 1954. In 1980 she became Kasten's second in command. She shared an office with him and spent most of the working day in his presence.

Beginning in the 1970's various cities in the county utilized the assessor's office to provide copies of county assessments for use by the cities in assessing their own taxes. These arrangements were made orally with Kasten. There was evidence that defendant participated in making these arrangements. In some cases oral advice of the charges was given to the cities but generally billing was accomplished through invoices from the assessor's office. These invoices requested that payment be made to specific named individuals. The reason given for this request was that the individuals were those doing the work on their own time and if the checks were payable to Kasten he would have to pay income tax on the amounts received. The specified individuals were persons who did not work in the assessor's office or persons who did or

had but had no connection with providing the copies. Among the individuals were defendant's son and daughter and invalid mother, and the children of several other employees. All copying of the records was done on an Address-o-graph machine which only defendant, sometimes with the assistance of Kasten, operated. Defendant would be copying the records when employees arrived at work at 8:30 and would continue until the arrival of Kasten between 9 and 9:30, at which time defendant would join him in their office. When the checks were received, employees, usually the relative of the person to whom the check was payable, would be told by Kasten to endorse the check and cash it at the bank nearby. The employee would then return and give the money to Kasten. The money was not given to the employees named as payees. Defendant was present in the office shared with Kasten when some of these occurrences happened. There was evidence that on some occasions the invoices were prepared by defendant.

Defendant was specifically charged with having appropriated the proceeds of two checks. The first was a check from the City of Festus dated October 13, 1983, made payable to C. Sullivan. The second was a check from the City of Crystal City dated October 11, 1983, made payable to C. Sullivan. Both were for $600. The forgery count was based upon an endorsement placed upon the Crystal City check by defendant when she knew that the endorsement of C. Sullivan was made by someone other than the payee. Handwriting expert testimony established that the endorsement of "C. Sullivan" was made by Shirley Wall, an employee in the assessor's office. The defendant's endorsement was made by defendant. Cheryl Sullivan had worked part-time in the assessor's office but was in college at Rolla, Missouri, in October 1983. She testified she did not endorse either check, was unaware of the checks, and gave nobody authority to endorse checks for her. The instructions submitted to the jury premised defendant's guilt on accessory responsibility.

■ Defendant's challenge to the sufficiency of the evidence as to the stealing counts is that the money appropriated did not belong to Jefferson County. The prosecution relied upon Sec. 53.071.3, RSMo 1978, which provides:

"In counties of the first class not having a charter form of government [Jefferson County] in which the assessor has entered into a contract with a city providing for the assessment of property in the municipality by the county assessor, all fees for this service received from the city pursuant to the contract shall be paid into the county treasury ..."

The statute goes on to provide that the assessor may be compensated for the service performed in an annual amount to be determined by the governing board of the county. Defendant contends that pursuant to Sec. 432.070, RSMo 1986, the contracts between the county and the municipalities were void because they were oral and that therefore Jefferson County was not the owner of the funds. Sec. 570.030 provides that a person commits the crime of stealing if he appropriates property "of another" with the purpose to deprive him of it. Sec. 570.010(9) defines, "of another." It states in pertinent part that property is that "of another" if any governmental subdivision or instrumentality other than the actor, has "a possessory or proprietary interest" therein.

The cases relied upon by defendant involve attempts to enforce contracts which did not comply with the statutory requisites of Sec. 432.070. *See* for example *Lalumondier v. County Court of St. Francois County*, 588 S.W.2d 197 (Mo.App.1979) [5]. They involve parties to the contracts. In *Casterline v. Stuerman*, 588 S.W.2d 86 (Mo.App.1979) [2] we stated that the purpose of the statute is to protect the county; "it was not designed to insulate individuals from liability for their tortious acts." Nor, we will add, from their criminal acts. Whether the county could have legally enforced the agreement between the assessor and the municipalities is irrelevant to this criminal prosecution. The municipalities honored the agreement and voluntarily

paid for the services rendered. The services were performed, at least in part, during working hours, utilizing a county employee and county equipment and supplies. Upon delivery of the municipal checks to the assessor's office, the county had a possessory interest in the proceeds thereof and that property interest was appropriated by the actions of Kasten and defendant. It would be a strange concept of law indeed that governmental employees are entitled to appropriate money received by them for the use of their employer where the money is not the product of a legally enforceable obligation. We decline to accept such a concept. The evidence sufficiently established that the proceeds of the checks were the property of Jefferson County.

■ Defendant challenges the admission of the evidence of billing statements, purchase orders, and cancelled checks pertaining to diversions of municipal payments other than the two charged in the information. The main criterion in determining the admissibility of evidence of a potentially prejudicial or inflammatory nature is relevance. *State v. Bextermueller*, 643 S.W.2d 292 (Mo.App.1982) [11, 12]. Evidence of other crimes is admissible if it tends to prove motive, intent, absence of mistake or accident, or common scheme embracing commission of two or more crimes related to each other, with proof of one tending to establish the other. *State v. Evans*, 699 S.W.2d 514 (Mo.App.1985) [1–3].

The evidence offered here of separate crimes clearly meets the common scheme exception. It demonstrated a course of activity of Kasten and defendant starting as early as 1974 and continuing unabated up to the diversion of the Festus and Crystal City checks. That course of activity was nearly identical to the actions surrounding the appropriation of the Festus and Crystal City payments, and demonstrated the intent and the method of Kasten and defendant to appropriate county money for Kasten. We find no error in the admission of this evidence.

■ Defendant next contends that she was entitled to an instruction requested by her that presented to the jury an "honest belief" defense. Sec. 570.070 codifies this defense. It provides that a person does not commit the offense of stealing if at the time of the appropriation he acted in the honest belief that he had the right to do so. The burden is upon the defendant to inject the issue of claim of right. That burden is not met by naked assertion but requires that defendant adduce facts from which, in the context of the entire case, the honesty of the defendant's belief can reasonably be inferred. *State v. Smith*, 684 S.W.2d 576 (Mo.App.1984) [12–16]. The defense is not to be submitted to the jury unless supported by evidence. *State v. Quisenberry*, 639 S.W.2d 579 (Mo. banc 1982) [1, 2].

Only two bits of testimony in this case even remotely support this defense. Shirley Wall testified that Kasten told her he had authority to do work for the cities. Defendant testified Kasten told her he had an attorney-general's opinion that what he was doing was proper. Defendant never requested to see such an opinion. Given the elaborate machinations utilized by Kasten and defendant for ten years to conceal from the county the receipt and appropriation of these funds this testimony is no more than a naked assertion of honest belief and did not require an instruction on that defense.

■ Defendant finally contends that the trial court erred in refusing to instruct the jury that it could not convict defendant on both the stealing and the forgery charges arising from the Crystal City check. She premises this contention solely on Sec. 556.041, RSMo 1986. Sec. 556.041 provides:

"When the same conduct of a person may establish the commission of more than one offense he may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if ... (3) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct; ..."

The language of the statute indicates that we must look to the language and interrelationship of the two statutes, not to

the factual application of the statutes in a given case. A contrary analysis was apparently applied in *State v. Dailey*, 708 S.W.2d 220 (Mo.App.1986) [1] without explanation. The use of the phrases "defined to prohibit" and "prohibit a specific instance of such conduct" indicate to us that the offense differentiation must appear from the two statutes and not from the charging instrument. Multiple punishments for the same act may create double jeopardy problems but not run afoul of Sec. 556.041. Defendant has not raised a double jeopardy challenge.

We are unable to conclude that forgery is merely a specific definition of a means to commit the generic crime of stealing. While it is true that frequently forgery is a means utilized to steal, the crime itself involves the creation or alteration of a document or physical object with the intent to defraud. Its purpose is to preserve the sanctity of those items upon which people rely. Stealing is the appropriation of the property or services of another. Forgery is a completed crime when the creation or alteration occurs with the requisite intent whether or not the fraud is consumated. Not every fraud meets the statutory definition of stealing. *See State v. Harris*, 313 S.W.2d 664 (Mo.1958) [5]; *State v. Wakefield*, 682 S.W.2d 136 (Mo.App.1984) [7]. We cannot conclude that Sec. 556.041 precludes defendant's conviction of both stealing and forgery.

Judgment affirmed.

KAROHL, P.J., and KELLY, J., concur.