**STATE of Missouri, Respondent,**

v.

**David G. PARKS, Appellant.**

**No. 72475.**

Missouri Court of Appeals, Eastern District, Division One.

June 9, 1998.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gregory L. Barnes, Asst. Atty. Gen., St. Louis, for respondent.

GARY M. GAERTNER, Judge.

Appellant, David Parks ("father"), appeals the judgment of conviction entered by the Circuit Court of the City of St. Louis, after a jury found him guilty of forgery, RSMo section 570.090.1(4) (1994),[1] and kidnapping, RSMo section 565.110. We affirm in part and reverse and remand in part.

Father and Andrea Hughes ("mother") lived together for about two years and separated in the fall of 1992. Shortly thereafter, mother gave birth to the parties' son, Yemane.

In December 1992, mother took a job in France where she remained until March 5, 1993. Mother and father had no contact between December 1992, and March 5, 1993.

On April 5, 1993, mother went to see her parents who lived at the Townhouse Apartments in the City of St. Louis. Mother parked in the parking garage and was walking toward the lobby when she saw father approaching her. Mother testified she ran for the lobby door with father chasing her. Mother further testified father tripped her causing her to fall to the garage floor, at which time father punched her several times in the face and head. Mother screamed,

---

**1.** All statutory references are to RSMo 1994.

which attracted the attention of the doorman, Alvin Morrison. Morrison went to the garage and found mother on the floor lying face down on top of Yemane with father standing over her. Morrison went into the lobby to call the police. Father subsequently got Yemane away from mother and ran out of the garage. Mother saw another individual, Mr. Shakelford, chase father as father ran out of the garage. Shakelford was able to apprehend father outside the garage, before father could cross the street. At this point, mother was able to get Yemane away from father.

Carole Dent, a St. Louis City Police Officer, responded to the scene. After talking with mother, Dent put out a special wanted bulletin for father's arrest.

On July 28, 1993, father filed a paternity action in St. Louis. Service of process was made upon mother at her former address in St. Louis, and service was accepted by a member of mother's family. However, at the time service was accepted mother was living in Houston, Texas.

On March 7, 1994, a City of St. Louis Associate Circuit Court judge heard father's paternity action. The trial court granted a default judgment in father's favor, finding father to be Yemane's natural father and awarding father custody.

On March 22, 1994, father went to the St. Louis Police Department to file a missing person's report regarding Yemane. Father told the police mother had taken the child and gone to France and that he had custody. Father subsequently provided the police with a copy of the March 7, 1994 order.

On April 8, 1994, mother filed a motion to set aside the March 7, 1994 default judgment arguing she had not been properly served because the papers had been left at her former address. The trial court entered an order setting aside the default judgment finding mother had not been properly served.

After the default judgment was set aside, mother returned to Texas where she filed a petition for custody. On June 14, 1994, mother filed a motion to dismiss father's paternity action in St. Louis. The case was set to be dismissed on September 1, 1994, if service was not perfected on mother.

On July 20, 1994, father obtained a writ of habeas corpus from a City of St. Louis Circuit Court judge which commanded mother to produce Yemane in St. Louis. Father provided the court with the March 7, 1994 order in support of his request for a writ, and later admitted he never told the court the March 7, 1994 order had been set aside. Also at this time, father requested the Circuit Attorney's office pursue parental kidnapping charges against mother, again producing the March 7, 1994 order in support of his request, as well as the writ just signed by the circuit court judge. The Circuit Attorney's office issued a warrant charging mother with parental kidnapping.

On July 21, 1994, mother's St. Louis attorney discovered a writ of habeas corpus had been issued and immediately notified the issuing judge there was no order of custody to support the writ as the March 7, 1994 order had been set aside. The judge immediately issued an order setting aside the writ of habeas corpus. However, mother was arrested in Texas on July 26, 1994, for parental kidnapping. Mother was placed in jail, and Yemane was turned over to father.

Mother was released from jail on July 28, 1994, and the charges against her were dismissed. Mother was advised Yemane had been taken to St. Louis and given to father. Mother thereafter returned to St. Louis and filed a motion for temporary custody. On August 3, 1994, the circuit court judge entered an order requiring father to present Yemane to the court on August 11, 1994, for a hearing on mother's motion for temporary custody. Between August 3, 1994, and August 11, 1994, mother saw her son three times. Mother last spoke with father on August 9, 1994.

Father failed to appear at the August 11, 1994 hearing. The court entered an order giving mother custody of the child. Mother subsequently sought charges against father for kidnapping. A warrant was issued for father's arrest.

On September 4, 1994, mother's brother saw father and Yemane in Washington Park, Illinois. Mother's brother chased father but was unable to apprehend father. No one in

mother's family saw father or the child again until December 1995.

On December 12, 1995, father and child were found living in a homeless shelter in North Carolina. The sheriff in North Carolina arrested father who was then extradited to St. Louis.

Father was charged on April 2, 1996, with child abduction (Count I), forgery (Count II), and kidnapping (Count III). The case was tried on March 17, 1997. During the instruction conference, the state submitted an instruction on Count II which was based upon MAI CR3d 324.20.4. Father objected to the instruction arguing it "takes language out of paragraph 1, subparagraph 3 [of RSMo section 570.090.1(3)]." Father further argued "while this verdict director does parallel the MAI, MAI does not parallel the statute." Father's objection was overruled and the instruction based on MAI 324.20.4 was given as Instruction No. 6.

Father was convicted of forgery and kidnapping and acquitted of child abduction. Father was sentenced to five years on each count with the sentences to run consecutively for a total of ten years.

Father appeals his conviction raising four points. His first and second points challenge the submission of Instruction No. 6, the verdict director for the offense charged in Count II, forgery. In his first point, father alleges the evidence and Instruction No. 6 differed from the offense charged. In his second point, father contends the trial court erred in submitting Instruction No. 6 claiming the instruction did not accurately define the offense of forgery, as defined by RSMo section 570.090. We find father's second point has merit and reverse and remand for new trial on that count.

The law defining the offense of forgery is set out in RSMo section 570.090 and provides a person commits the crime of forgery if, with the purpose to defraud, he:

> (1) Makes, completes, alters or authenticates any writing so that it purports to have been made by ... authority of one who did not give such authority; or

* * * *

> (3) Makes or alters *anything other than a writing,* so that it *purports to have a genuineness ... it does not possess; or*

> (4) *Uses as genuine, ... any writing or other thing which the actor knows has been made or altered* in a manner described in this section.

(Emphasis added).

Father was charged with forgery, using as genuine a court order, in violation of RSMo section 570.090.1(4). Instruction No. 6, the verdict director for the forgery count instructed as follows:

> First, that on or about July 21, 1994, in the City of St. Louis, State of Missouri, the defendant *used as genuine a court order,* and

> Second, that the defendant *knew that this writing had been made so that it purported to have a genuineness which it did not possess,* and

> Third, that defendant did so for the purpose to defraud, then you will find the defendant guilty under Count II of forgery.

> However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

> If you do find the defendant guilty under Count II of forgery, you will return a verdict finding him guilty of forgery.

Instruction No. 6 was modeled after MAI CR3d 324.20.4, which reads in pertinent part:

> First, that (on) (on or about) [*date*], in the (City) (County) of _____, State of Missouri, the defendant (used as genuine) (possessed for the purpose of using as genuine) (transferred with the knowledge or belief that it would be used as genuine)*[Describe writing or item.],* and

> Second, that [*Insert one of the following....*]

> [*1*] that defendant knew that this (writing) (item) had been (made) (completed) (altered) (authenticated) so that it purported to have been made (by another) (at another time) (at another place) (in a

numbered sequence other than was in fact the case) (with different terms) (by the authority of one who did not give such authority),

[2] that the defendant knew that this (writing) (item) had been (made) (altered) so that it purported to have a (genuineness) (antiquity) (rarity) (ownership) (authorship) which it did not possess,

and

Third, that defendant did so with the purpose to defraud, then you will find the defendant guilty ... of forgery.

This pattern instruction contains an error in paragraph Second, subsection [2]. The pattern instruction permits the user to select either the word "writing" or "item" in the first line of that subsection. The error is in permitting the selection of the word "writing."

Paragraph Second, subsection [2] of the pattern instruction is designed to combine the elements required by RSMo sections 570.090.1(3) and 570.090.1(4). Subsection (3) of the statute applies to "anything other than a writing." Although subsection (4) of the statute refers to "writing or other thing," when combined with subsection (3), the specific wording of subsection (3) clearly provides it does not° apply to a writing. Thus, paragraph Second, subsection [2] of the pattern instruction erroneously includes the word "writing."

As stated above, father was charged with using a writing, in violation of RSMo section 570.090.1(4). However, the particular way he was charged brought his conduct under RSMo section 570.090.1(3), i.e. "purports to have a genuineness ... it does not possess." As stated, that section by its specific language does not apply to writings. Thus, although the trial court followed the appropriate pattern instruction, the pattern instruction was erroneous.

Our Supreme Court has stated, "[I]f an instruction following MAI–CR3d conflicts with the substantive law, any court should decline to follow MAI–CR3d or its Notes on Use." *State v. Carson,* 941 S.W.2d 518, 520 (Mo.banc 1997). Therefore, while Instruc-

tion° No. 6 was modeled after MAI–CR3d 324.20.4, because the use of the term "writing" in paragraph Second, subsection [2] conflicts with the substantive law, the trial court erred in giving the instruction. As to this point, the state concedes father's argument has merit. Accordingly, we reverse and remand for new trial on that count. With respect to the remaining two counts on appeal, we have reviewed the briefs of the parties, the legal file, and transcript and finding no error, therefore, we affirm the judgment of the trial court with respect to the kidnapping count pursuant to Rule 30.25(b).

GRIMM, P.J., and PUDLOWSKI, J., concur.