STATE of Missouri, Respondent,

v.

Eric S. TROTTER, Appellant.

No. WD 56122.

Missouri Court of Appeals, Western District.

Nov. 16, 1999.

Tara L. Jensen, Asst. Appellate Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before Presiding Judge ALBERT A. RIEDERER, Senior Judge FOREST W. HANNA [1] and Judge LAURA DENVIR STITH.

LAURA DENVIR STITH, Judge.

Defendant–Appellant Eric S. Trotter appeals from his conviction of forgery of a check in violation of Section 570.090.1(4) RSMo 1994, for which he was sentenced to seven years in prison. Mr. Trotter asserts that the trial court erred in denying his motion for judgment of acquittal because the State was required to prove that he actually completed writing and offered the forged check, whereas the evidence showed that he never offered the check and left the store without completely filling

---

1. Judge Hanna took senior status following submission of this case.

it out or tearing it from the checkbook. We agree that this evidence failed to make a submissible case of forgery, and reverse that conviction. Because the evidence shows without dispute that Defendant did attempt to commit forgery as defined in Section 570.090.1(4) RSMo 1994, and because attempted forgery is a lesser included offense of forgery, the elements of which were found by the jury, we remand for entry of judgment and sentencing for attempted forgery.

## I. Factual And Procedural Background

The facts adduced at trial, considered in the light most favorable to the verdict, are as follows: On October 3, 1997, at approximately 11:30 a.m., Defendant and Reginald Daniels drove to a QuikTrip convenience store located at 10th Street and Armour Road in North Kansas City, Missouri. Upon arriving, Mr. Trotter began pumping gas into his car, and then proceeded inside the store to purchase a six-pack of beer and a bag of ice, which he brought up to the counter. The store clerk informed Mr. Trotter that the total amount of his purchase was $14.27. Mr. Trotter then pulled out a checkbook that contained a book of checks from Nations Bank of Kansas City imprinted with the name "Eulius McClain," and began writing out check No. 5624 for the amount of his purchase.

Miranda Neer, the clerk on duty at the time Mr. Trotter was filling out the check, became suspicious upon seeing the name "Eulius McClain" on the check. She recognized that the type of check and the name on the check were similar to those contained on photocopies of previously returned checks. She retrieved the photocopies of the returned checks and showed them to the assistant manager on duty, Mr. Steven Yeary, who was also behind the counter with Ms. Neer.

Mr. Yeary approached the register and looked down at the check stand where Mr. Trotter was filling out check No. 5624. He recognized the name on the account as similar to that on bad checks that had been returned by the bank for insufficient funds. Mr. Yeary also recognized Mr. Trotter because the latter had been in the store a day or so before the alleged crime, and Mr. Yeary had personally taken a check from him written on the same account. On that former occasion, Mr. Yeary had noticed that there was another check from the account of "Eulius McClain," and that, while both of these checks were written on the same account, each listed a different social security number.

After noting these facts, Mr. Yeary informed Mr. Trotter that the store could not accept his check and that he would have to pay cash for the gas and store merchandise. At this point, Mr. Trotter had written in the date, "10/3/97," the payee, "Quick Trip," the dollar amount in numbers, "$14.27," and had signed the check, "Eulius McClain." He had also printed what purported to be his social security number in the upper-right hand corner of the check. He had not written out the amount of the check in words, however, nor had he torn the check from the checkbook or handed it, or tried to hand it, to the clerk.

Upon being told that the store would not accept his check, Mr. Trotter left the store. While he left the beer and the ice on the counter, he drove off without paying for the gas. Mr. Yeary was able to get his license plate number, and called the North Kansas City Police. Shortly thereafter, the police stopped Mr. Trotter and a companion, Reginald Daniels. The police told Mr. Trotter that employees of QuikTrip had informed him that he had driven off without paying for his gas, and that he had attempted to defraud the store. The police officers testified that his response was, "I admit to driving off, but I don't know nothing about the other stuff."

Upon determining that Mr. Trotter had attempted to pass a bad check, the police arrested him and took him into custody. They released Mr. Daniels. The police

searched the car Mr. Trotter had been driving, and found a book of personal checks, including one check in the amount of $14.27, which was filled out except for the writing out of that amount. In addition, police found "a brand new Master Card," a library card, and a Flamingo Hilton Casino card, all in the name of "Eulius McClain."

Testimony at trial revealed that the account upon which the check was drawn had been opened by an "Eulius McClain" on June 18, 1997, with a deposit of $25.00. This same account was closed on September 25, 1997, because of a number of overdrafts. It is unclear from the evidence and testimony at trial exactly how many fraudulent checks were written on the account and in what amount. The case was submitted on one count of forgery and one count of attempted forgery of a check. The jury found him guilty of forgery, and so did not reach the instruction on the lesser included offense of attempted forgery. This appeal followed.

## II. STANDARD OF REVIEW

■ Where, as here, a defendant claims that the evidence presented at trial was insufficient to sustain his or her conviction, we "are required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences.... [D]isregard contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them," and determine whether a "reasonable juror could find each of the elements beyond a reasonable doubt." *State v. Grim,* 854 S.W.2d 403, 411 (Mo. banc 1993). *Accord, State v. Dulany,* 781 S.W.2d 52, 55 (Mo. banc 1989).

## III. THE STATE'S EVIDENCE SHOWED ONLY ATTEMPTED FORGERY, NOT FORGERY

Mr. Trotter argues that the State failed to make a submissible case of forgery in that the undisputed evidence shows that he neither completed filling out the check nor offered it to the clerk at the QuikTrip store. He argues that this evidence at most made out a case for attempted forgery, not forgery itself.

The crime of forgery is set out in Section 570.090.1 as follows:

1. A person commits the crime of forgery if, with the purpose to defraud, he

(1) Makes, completes, alters or authenticates any writing so that it purports to have been made by another or at another time or place or in a numbered sequence other than was in fact the case or with different terms or by authority of one who did not give such authority; or

(2) Erases, obliterates or destroys any writing; or

(3) Makes or alters anything other than a writing, so that it purports to have a genuineness, antiquity, rarity, ownership or authorship which it does not possess; or

(4) Uses as genuine, or possesses for the purpose of using as genuine, or transfers with the knowledge or belief that it will be used as genuine, any writing or other thing which the actor knows has been made or altered in the manner described in this section.

Section 570.090.1 RSMo 1994. The State chose to charge Mr. Trotter with violation of Section 570.090.1(4), and accordingly submitted its forgery claim under an instruction which permitted the jury to find Mr. Trotter guilty if it found beyond a reasonable doubt:

First, that on or about October 3, 1997, in the county of Clay, State of Missouri, the defendant used a genuine a check number 5624 on the account of Eulius McClain payable to QuikTrip, and

Second, that the defendant knew that this writing had been made so that it purported to have a genuineness which it did not possess, and

Third, that defendant did so with the purpose to defraud, then you will find the defendant guilty of forgery.

The State also submitted the crime of attempted forgery under Sections 570.090.1(4) and 564.011, in that he had taken a substantial step toward committing forgery, as follows:

If you do not find the defendant guilty of forgery, you must consider whether he is guilty of an attempt to commit forgery.

If you find and believe from the evidence beyond a reasonable doubt:

First, that on or about October 3, 1997, in the County of Clay, State of Missouri, the defendant partially completed a check number 5624 on the account of Eulius McClain payable to QuikTrip, and

Second, that such conduct was a substantial step towards the commission of the offense of forgery of a check number 5624 on the account of Eulius McClain payable to QuikTrip, and

Third, that defendant engaged in such conduct with the purpose of committing such forgery,

then you will find the defendant guilty of an attempt to commit forgery.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

As used in this instruction the term "substantial step" means conduct which is strongly corroborative of the firmness of the defendant's purpose to complete the commission of the offense . . .

The jury found Mr. Trotter guilty of forgery, and so did not reach the attempted forgery instruction.

■ Mr. Trotter concedes that, if believed by the jury, the evidence that he went into the store, put beer on the counter with the intent of purchasing it, partially filled out a check for the purchase price, quit doing so, and left the store once he was told that his check would not be accepted and would have to pay cash, would be sufficient to support submission of attempted forgery because such behavior would constitute a substantial step toward commission of a forgery. He argues, however, that it could not constitute forgery itself, as the evidence showed that he did not finish writing the check, did not tear it out, did not offer it to the clerk, and did not obtain anything of value for the check.

■ We agree with Mr. Trotter that this conduct, while sufficient to constitute attempted forgery, did not constitute forgery. In order to convict Mr. Trotter of forgery, the jury had to find that he "used the check as genuine."[2] The statute does

2. Because of our resolution of this issue, we need not reach the argument that the court erred in submitting a forgery instruction which permitted the jury to find he committed forgery if he used a check as genuine knowing the writing had been made so that it purported to have a genuineness which it did not possess. Defendant argues that, while this instruction comported with MAI–CR3d 324.20.4, the Eastern District held in *State v. Parks*, 969 S.W.2d 870 (Mo.App. E.D.1998), that this aspect of the model instruction is inconsistent with the forgery statute, Section 570.090.1(3), which states that forgery by using something which purports to have a genuineness it does not possess applies only to things other than writings. The criminal instructions have been revised, effective September 1, 1999, to comport with the *Parks* decision.

This Court held in *State v. Pride*, 1 S.W.3d 494, 504 (Mo.App. W.D. 1999), that where an objection on this basis was not raised below, we will reverse only if the variance caused plain error, and we found no plain error in *Pride*. Here, too, the error was not preserved below. We need not determine whether the error in this case constituted plain error under Rule 30.20, for we have, for the reasons stated in the remainder of this opinion, reversed the conviction on other grounds and remanded for resentencing for attempted forgery. We note that no claim is made on appeal that the instruction on attempted forgery was erroneous, and, in any event, the jury did not consider the attempted forgery instruction as it found Mr. Trotter guilty of forgery.

not define use, and the State argues, without citation of authority, that the legislature used a general word such as "use" rather than a specific word such as "pass" or "utter" because it wanted us to interpret "use" broadly to mean "any use of a forged writing, *including attempts to utter or offer for payment.*" (emphasis added). We disagree. First, the legislature necessarily employed a general word such as use in the statute, for it applies to all types of forgery, not just forging by check. Second, the legislature did not state in the statute that an attempt to use an item as genuine constitutes forgery. It stated that use of the item as genuine constitutes forgery. If we were to accept the State's argument, we would merge the crimes of attempted forgery and forgery, and would bend the meaning of the word use beyond reasonable bounds.

■ Where, as here, the legislature has not defined a word in a statute, we should instead give it its common sense, dictionary meaning, in the absence of an indication that it was used in a specialized sense. *Columbia Athletic Club v. Director of Revenue*, 961 S.W.2d 806, 809 (Mo. banc 1998); *State v. Carson*, 941 S.W.2d 518, 521 (Mo. banc 1997); *State v. Conaway*, 824 S.W.2d 50, 53 (Mo.App. E.D.1991) (court applied the plain and ordinary meaning of "transfer" under Section 590.090.1(4) RSMo 1986.) *Accord, United States v. Mayberry*, 774 F.2d 1018, 1020 (10th Cir.1985). The dictionary definition of "use" is:

> *Use*, to put into action or service; avail oneself of; to consume or take regularly; to carry out a purpose or action by means of; to expend or consume by putting to use; to behave toward.

*Merriam Webster's Collegiate Dictionary* at 1301 (10th Ed.1994). We note that this is consistent with the usual legal definition of "use." Black's Law Dictionary defines "use" as:

> *Use*, To make use of; to convert to one's service; to employ; to avail oneself of; to utilize; to carry out a purpose or

action by means of; to put into action or service, especially to attain an end. *Black's Law Dictionary* at 1072 (6th Ed.1991).

These definitions of the word use are consistent with the meaning given the words "utter" and "pass," words commonly associated with trying to obtain something with a false check. "Utter" is commonly defined as:

> *Utter*, to offer for sale; to put (as currency) into circulation; to circulate (as a counterfeit note) as if legal or genuine; to put forth or out.

*Merriam Webster's Collegiate Dictionary* at 1302 (10th Ed.1994) (parentheses in original). Black's Law Dictionary similarly defines "utter" as follows:

> *Utter*, to put or send (a document) into circulation; esp., to circulate (a forged note) as if genuine.

*Black's Law Dictionary* at 1545 (7th Ed.1999) (parentheses in original). Missouri courts have defined "utter" using nearly identical terms in *State v. Hartman*, 364 Mo. 1109, 273 S.W.2d 198, 206–07 (Mo. banc 1954) and *State v. Hayes*, 602 S.W.2d 29, 32 (Mo.App. W.D.1980). In *Hayes*, we further stated, "[t]o utter as used in a statute proscribing forgery and counterfeiting [Section 561.011 RSMo 1969,] means to offer, whether accepted or not, a forged instrument with the representation by words or actions, that the same is genuine." *Hayes*, at 32.

"Pass" is similarly defined as:

> *Pass*, to go from the control, ownership, or possession of one person or group to that of another; to serve as a medium of exchange; to put into circulation ( [pass] bad checks); to transfer or transmit from one to another.

*Merriam Webster's Collegiate Dictionary* at 848 (10th Ed.1994) (parentheses in original), and in Black's Law Dictionary as:

> *Pass*, to publish, transfer, or circulate (a thing, often a forgery).

*Black's Law Dictionary* at 1145 (7th Ed.1999) (parentheses in original).

As Mr. Trotter concedes, under these definitions the State was not required to prove that the clerk accepted his bad check, for:

It is immaterial whether the instrument is accepted as true; '[t]o utter as used in a statute proscribing forgery and counterfeiting means to offer, whether accepted or not, a forged instrument with the representation by words or actions, that the same is genuine.'

*Hayes,* 602 S.W.2d at 32, *quoting, State v. Washington,* 570 S.W.2d 838, 841 (Mo.App. 1978). *Accord, State v. Pilousek,* 747 S.W.2d 766, 770 (Mo.App. E.D.1988) ("[f]orgery is a completed crime when the creation or alteration occurs with the requisite intent whether or not the fraud is consummated.")

All of these cases and definitions have something else in common too; while a forgery conviction for the crime of passing a bad check does not require that the defendant receive a benefit in the commission of the crime, in every case in which a conviction was upheld for the crime of forgery where the defendant passed a bad check, the evidence showed that the defendant at least *offered* the check to the victim, even if it was not accepted. The State has cited no case, and we have found none, either in Missouri or elsewhere, in which a person has been convicted of forgery where the person retained the check in his or her possession and left without completing it and without offering it to another.

This makes sense, for in order to utter a check, one offers it or puts it forth or sends it. In order to pass a check, one transfers it or puts it into circulation. And, in order to use an item, one employs or avails oneself of it or puts it into service or action. No doubt for this reason, the many cases which have said that acceptance of the forgery is not required have repeatedly held that the reason that acceptance is not required is that *an offer is enough,* for then defendant has wrongfully used the check or other instrument. *See, e.g., McDonald v. State,* 829 S.W.2d 378, 382 (Tex.App.1992) (rejecting argument that deletion of acceptance requirement improperly merged forgery and attempted forgery, since there were still a variety of fact situations which fell short of an offer but which could constitute an attempt); *State v. Ruffins,* 109 N.M. 668, 789 P.2d 616, 619 (1990) (physical delivery of a forged instrument was necessary to constitute "issuing or transferring" of a forged instrument); *McGee v. State,* 667 S.W.2d 295 (Tex.App.1984) ("pass" of forgery did not require acceptance by the party to be defrauded but only that defendant offered the instrument); *Landry v. State,* 583 S.W.2d 620 (Tex.Crim.App.1979) (accord). It follows that, in the absence of such an offer, at best there is an attempt at forgery, but not a completed forgery.

This reasoning is applicable here. The State's evidence showed only that Mr. Trotter partially filled out the check but then left without offering it or completing it when he realized it would not be accepted by the clerk. He thereby attempted to commit forgery, but he did not utter or offer the check—he did not use it—and therefore the State failed to make a submissible case that he actually committed forgery. For these reasons, we reverse Mr. Trotter's conviction for forgery.

■ Where, as here, a conviction of a greater offense is overturned on appeal due to the insufficiency of the evidence, we need not necessarily remand for an entire new trial. If the evidence was sufficient for the jury to find each of the elements of a lesser-included offense, and the jury was required to find those elements in reaching its verdict on the greater offense, then instead of remanding for an entire new trial, we can remand for entry of a conviction on the lesser-included offense. *State v. O'Brien,* 857 S.W.2d 212, 220 (Mo. banc 1993); *State v. Kenney,* 973 S.W.2d 536, 546 (Mo.App. W.D.1998); *State v. Granger,* 966 S.W.2d 27, 29 (Mo.App. E.D.1998).

■ Such a remand is proper here. Forgery is a Class C felony, punishable by

up to seven years imprisonment. Section 558.011.1(3) RSMo 1994. Attempted forgery is a lesser-included offense of forgery, and in fact was submitted in this case under Section 564.011. Attempted forgery under Section 564.011 is a Class D felony, for which the maximum punishment is five years imprisonment. Section 558.011.1(4) RSMo 1994. In order to prove attempted forgery the State had to prove an intent to commit forgery and that Defendant took a substantial step toward the forgery.

The evidence below was sufficient to support a finding of attempted forgery in that the evidence showed that Defendant intended to commit forgery and committed a substantial step toward commission of forgery, in that he possessed false identification and checks for a closed account, picked up items to purchase and completed most of the steps necessary to use the checks to purchase the items, but was stopped from doing so by the clerk before he could perform the last steps of writing the amount, tearing out the check, and offering it to the clerk. The jury found the elements of attempted forgery in convicting Defendant of forgery. Thus, under *O'Brien, Kenney,* and *Granger,* we can remand for entry of conviction of attempted forgery. As Mr. Trotter is a prior offender, on remand the trial court can determine his sentence for this crime.

Presiding Judge ALBERT A. RIEDERER and Senior Judge FOREST W. HANNA concur.