**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Marvin STEWART,
Defendant/Appellant.**

**Marvin STEWART, Movant/Appellant,**

v.

**STATE of Missouri,
Respondent/Respondent.**

**Nos. 56756, 58480 and 58594.**

Missouri Court of Appeals,
Eastern District,
Division Three.

June 25, 1991.

Henry B. Robertson, Beth A. Davis, St. Louis, for defendant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

REINHARD, Presiding Judge.

Defendant appeals following his conviction by a jury of first degree arson, § 569.-040, RSMo Supp.1990, and three counts of first degree assault, § 565.050, RSMo 1986. He was sentenced as a prior and persistent offender, §§ 557.036.4, 558.016, RSMo 1986, to a term of 30 years for the offense of arson, and life imprisonment for each of the three offenses of assault; the sentences for arson and the assault against Eric Dillard to be served concurrently, but consecutive to the concurrent sentences for the assaults against Wilma and Edonna Dillard. After sentencing, defendant filed an untimely Rule 29.15 motion which the motion court denied without an evidentiary hearing. These appeals have been consolidated for review pursuant to Rule 29.15(1). We affirm the judgments.

The evidence reveals that on July 28, 1988, defendant and Eric Dillard had a fist fight. Following blows, Dillard chased the defendant, knocked him down, and held a knife to his throat. Both men got up and the defendant ran away. Dillard then went to the home of his wife and children, where he sometimes spent the night. Dillard fell asleep on a sofa near a front window on the second floor. Dillard's wife, Wilma, and his infant daughter, Edonna, were at home, along with the couple's four other children. The children's ages ranged from four months to seven years.

Witnesses testified that later that evening defendant arrived in the neighborhood and announced his intentions to "blow up" the Dillard house. Defendant purchased gasoline at a nearby service station and made a Molotov cocktail by pouring the gasoline into an empty forty-ounce beer bottle, using a piece of cloth for a wick.

Defendant then asked which window was defendant's, lit the rag, and threw the firebomb through the front window of the Dillard home. An explosion followed, engulfing the house in flames. Fire investigators testified that the cause of the fire was a Molotov cocktail. A bottle neck with a wick in it and several pieces of brown bottle glass were recovered from the fire scene. After the explosion defendant asked a witness, "Well, did I burn up the nigger?" When the witness replied, "Yeah, he burnt up real bad," the defendant laughed.

Eric Dillard was sleeping on the sofa when the fire started. He suffered burns over fifty percent of his body and was hospitalized for two months before being released. He underwent skin graft surgery on several occasions and was scheduled for more surgery at the time of trial, eight months after the fire.

Wilma Dillard received burns on her hands, nose and eyes and suffered smoke inhalation. She lost consciousness at the fire scene. She was hospitalized for six days following the fire and experienced blurred vision and breathing problems following release. Ms. Dillard continued to have breathing difficulty and chest pain from smoke inhalation through the time of trial.

Edonna Dillard, the baby, received burns on her ears, nose and hands and suffered from smoke inhalation. She was unconscious when she was carried from the burning building. She was hospitalized following the fire and experienced breathing problems following release.

■ Defendant does not challenge the sufficiency of the evidence as to his arson conviction. He does, however, claim that the state did not make a submissible case on the assault charges. He asserts that there was insufficient evidence that defendant knowingly and intentionally caused the victims' injuries. Further, he claims that there was insufficient evidence that defendant caused serious physical injury to Wilma and Edonna Dillard. When reviewing the sufficiency of the evidence to sup-

port a criminal conviction, we accept as true all evidence tending to prove defendant guilty together with all reasonable inferences which support the verdict. We ignore all contrary evidence and inferences. *State v. Rousan,* 752 S.W.2d 388, 389 (Mo. App.1988).

■ Section 565.050, RSMo 1986, provides, "A person commits the crime of assault in the first degree if he ... knowingly causes ... serious physical injury to another person." Direct proof of mental state in a criminal case is seldom available and such intent is usually inferred from circumstantial evidence. *State v. Brown,* 660 S.W.2d 694, 699 (Mo. banc 1983). "A defendant's mental state may be determined from evidence of his conduct before the act, the act itself and from defendant's subsequent conduct." *State v. Johnson,* 770 S.W.2d 263, 267 (Mo.App.1989). A jury may also consider the type of weapon used, the manner and circumstances under which it is used, the results, and other relevant factors. *State v. Robinson,* 710 S.W.2d 14, 17 (Mo.App.1986). "If [the accused] knows the probable consequence of the assault will be to injure any one or all of the persons he sees *or is otherwise bound to believe are before him,* he will be liable as to any one of them." *State v. Macone,* 585 S.W.2d 64, 67 (Mo.App.1979) (emphasis added).[1]

■ Following a fight with Eric Dillard, defendant announced, in the presence of several people, his intentions to "blow up" the house where Eric Dillard was staying that night. He then concocted a Molotov cocktail. After inquiring at which window he should aim, he threw the firebomb through the front window of the Dillard home. Later he said, "Well, did I burn up the nigger?" A strong case was made on the assault of Eric Dillard. The evidence further shows that defendant either contemplated or should have contemplated the presence of Eric Dillard's wife and family in their home and was therefore sufficient to warrant submission to the jury on the question of intent to commit first degree assault against Wilma and Edonna Dillard.

■ Defendant also claims that there was insufficient evidence to demonstrate serious physical injury to Wilma and Edonna Dillard. This claim is also without merit. Serious physical injury means "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the functions of any part of the body." § 565.-002(6), RSMo 1986. Substantial risk of death suggests "a condition of endangerment with cause for apprehension of life threatening consequences." *Johnson,* 770 S.W.2d at 265. This circumstance is indicated by use of the word "risk" which connotes something less than a probability or likelihood. *Johnson,* 770 S.W.2d at 266. Protracted loss or impairment of the function of any bodily member or organ means something short of permanent, but more than a short duration. What is "protracted" depends on the circumstances of each case. *State v. Mentola,* 691 S.W.2d 420, 422 (Mo.App.1985). Wilma and Edonna Dillard had to be rescued from the burning house, lost consciousness from smoke inhalation and were hospitalized as a result. Wilma was hospitalized for six days and suffered breathing problems at the time of trial, which was eight months later. Wilma clearly suffered physical injury that caused impairment of the function of her lungs. The fact that she continued to have breathing problems satisfies the "protracted" requirement.

■ What satisfies a serious physical injury depends on the circumstances of each case. Clearly, a minor injury to an adult can be much more serious to a baby. Furthermore, the interpretation of "protracted" may vary when the injuries are incurred by an infant. *State v. Fitzgerald,* 778 S.W.2d 689, 692 (Mo.App.1989). We believe that the evidence that Edonna was unconscious, suffered burns, and had breathing problems after leaving the hospital supports a finding of serious physical injury to a four-month old baby.

1. The statute involved in *Macone* was felonious assault with malice, § 559.180, RSMo 1969 (re- pealed 1979), which required a more culpable mental state than the statute in question here.

Defendant further contends that the trial court erred in permitting the circuit attorney to argue the defendant's failure to put on evidence, thus highlighting his failure to testify. The following is the challenged argument:

The State has the burden of proof, and you've seen that dramatically in this particular case. That means I must put on the evidence that convinces you beyond a reasonable doubt that he committed the crime. The defendant has no burden and has placed no evidence on the stand.... There is nothing about the State's evidence that is denied. There is nothing about the State's evidence as far as injury, as far as risk of death, as far as who did it, that is refuted.

A prosecutor may not refer directly to a defendant's failure to testify. However, the State's closing argument will be disturbed only where the references to the defendant's failure to testify are direct and certain. *State v. Gardner*, 743 S.W.2d 472, 473 (Mo.App.1987). "Merely stating that the evidence is 'uncontradicted' or that a defendant has failed to offer evidence is not a direct and certain reference." *State v. Robinson*, 641 S.W.2d 423, 426 (Mo. banc 1982). The circuit attorney's argument here was proper, and the court did not err in overruling defendant's objection.

Finally, defendant appeals dismissal of his Rule 29.15 motion, asserting that the time limitations imposed by the rule violate his constitutional rights. Defendant's motion was not timely filed. The time limits contained in Rule 29.15 are valid, reasonable, and mandatory. They serve the legitimate end of avoiding delay in the processing of prisoner's claims and prevent the litigation of stale claims. *Day v. State*, 770 S.W.2d 692, 695 (Mo. banc 1989), *cert. denied sub nom. Walker v. Missouri*, —— U.S. ——, 110 S.Ct. 186, 107 L.Ed.2d 141 (1989). Defendant's point is without merit.

The judgments are affirmed.

STEPHAN and CRANE, JJ., concur.