STATE of Missouri, Respondent,

v.

Timothy J. WHALEN, Appellant.

No. SC 82822.

Supreme Court of Missouri,
En Banc.

July 10, 2001.

Irene C. Karns, Asst. Public Defender, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Adriane D. Crouse, Asst. Atty. Gen., Jefferson City, for Respondent.

LAURA DENVIR STITH, Judge.

Defendant Timothy Whalen was convicted of one count of class A first-degree assault, two counts of class B first-degree assault, and three associated counts of armed criminal action for causing serious physical injury to a police officer and for attempting to cause serious physical injury to two other officers. Defendant appeals, arguing that the State failed to prove the two counts of class B assault beyond a reasonable doubt. He further argues that the trial court erred in instructing the jury that voluntary intoxication would not relieve him of responsibility for his acts and that the trial court erred in denying his motion for change of venue.

The State failed to present evidence from which the jury could find beyond a reasonable doubt that Defendant attempt-

ed to cause serious physical injury to the two officers who were the subjects of the two counts of class B assault in the first degree. Therefore, the judgment is reversed as to those convictions and the two associated convictions for armed criminal action. Because the evidence was sufficient to support conviction of the lesser included offense of second-degree assault and armed criminal action, in that Mr. Whalen recklessly caused physical injury to the other two deputies by firing his shotgun at them, this Court remands for entry of judgment of conviction and sentencing on two counts of second-degree assault and two associated counts of armed criminal action as to the two other deputies. There is no merit in Defendant's other two points. The judgment as to the class A felony of first-degree assault and the associated armed criminal action charge is affirmed.

## I. FACTUAL BACKGROUND

Timothy Whalen lived in a mobile home with his wife Misty and young child. He lost his job and became convinced that a conspiracy existed to do him harm. His behavior caused his wife and parents to become concerned, and, on January 28, 1998, his father threatened to involuntarily commit him the next day. Mr. Whalen agreed to enter the hospital of his own volition, but stated that he wanted to rest first.

That night, in the early morning hours of January 29, 1998, Police Officer Taylor knocked on the door of the Whalens' trailer and said, "Open up, it's the police." Mr. Whalen went into the bedroom, grabbed a gun, and began yelling that the person at the door was not really from the police. Mrs. Whalen answered the door anyway, and the officer explained that he was responding to a 911 hang-up call made from the residence. Mrs. Whalen told Officer

Taylor that she had not made a 911 call. She also said that her husband was having a mental breakdown and wanted to go to the hospital, but that they had no need for the police. Officer Taylor left the doorstep, but went back to his cruiser and waited for backup help to arrive.

In the meantime, Mr. Whalen told his wife that he wanted an ambulance and demanded proof that Officer Taylor was really a policeman. The 911 operator called the Whalen home and stayed on the line with Mrs. Whalen, who told the operator that her husband had a gun. Corporal Cummines and Deputy Edler eventually arrived. All three entered the Whalens' home and spoke with Mrs. Whalen about her husband's situation. Officer Taylor determined that it would be dangerous for an ambulance to come until Mr. Whalen was in control and arranged for it to wait elsewhere. During this time, Mr. Whalen continued to yell about the conspiracy, to demand to see police identification, and to ask that the ambulance lights be turned on.

Mrs. Whalen testified at trial that she told the officers not to go near the bedroom as her husband had a gun, and one of the officers acknowledged he was told about the gun. Nonetheless, the three officers decided to approach the bedroom, with Corporal Cummines leading the way. The testimony is consistent that the other two officers were walking behind Corporal Cummines and a bit to either side of him, but from the record it is impossible to determine their exact position.

As Corporal Cummines stopped at the bedroom doorway, he drew his service revolver and turned to motion to the others to stop. At that moment, Mr. Whalen fired, very seriously injuring the corporal with a single 12–gauge shotgun blast to the head. Although the other two officers were not close enough to the doorway to be able to see Mr. Whalen at the time he

fired the shot, they were close enough so that Deputy Edler felt hot air and a stinging sensation on his face and hand, which required a tetanus shot, while Officer Taylor felt a hot flash on his cheek and was also treated at the hospital.

After the officers were taken to the hospital, a member of the sheriff's department emergency response team negotiated with Mr. Whalen. At one point during the negotiations, Mr. Whalen leaned out the bedroom window and shouted that he had shot one person, and that if anybody came into the trailer, he would shoot another. Eventually, Mr. Whalen was taken into custody without further incident.

As a result of the confrontation, Mr. Whalen was tried on charges of one count of class A assault in the first degree under section 565.050,[1] for causing serious physical injury to Corporal Cummines. He was also tried on two counts of class B assault in the first degree under section 565.050 for attempting to cause serious physical injury to Officer Taylor and Deputy Edler, as well as on three associated counts of armed criminal action in violation of section 571.015. Mr. Whalen relied on a defense of mental disease or defect, and additionally argued that there was insufficient evidence to show that he attempted to kill or cause serious physical injury to Officer Taylor and Deputy Edler. The jury convicted Mr. Whalen on all counts.[2] Mr. Whalen appeals.

## II. STANDARD OF REVIEW

In reviewing a challenge to sufficiency of the evidence, this Court must determine whether there is sufficient evidence from which a reasonable juror could have found the defendant guilty beyond a reasonable doubt. In applying this standard, the Court:

> must look to the elements of the crime and consider each in turn. .... [The Court is] required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence. [The Court] disregard[s] contrary inferences, unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them. Taking the evidence in this light, [the Court] consider[s] whether a reasonable juror could find each of the elements beyond a reasonable doubt.

*State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993), *cert. denied*, 510 U.S. 997, 114 S.Ct. 562, 126 L.Ed.2d 462 (1993).

This Court, thus, views the evidence in the light most favorable to the verdict and gives the State the benefit of all reasonable favorable inferences therefrom. The Court may "not supply missing evidence, or give the [State] the benefit of unreasonable, speculative or forced inferences." *Bauby v. Lake*, 995 S.W.2d 10, 13 n. 1 (Mo.App. E.D.1999). "If the evidence is insufficient to sustain a conviction, plain error affecting substantial rights is involved from which manifest injustice must have resulted." *State v. Withrow*, 8 S.W.3d 75, 77 (Mo. banc 1999).

1. All statutory citations are to RSMo 1994 unless otherwise indicated.

2. The court sentenced Mr. Whalen to consecutive terms of 20 years and six years, respectively, for the class A first-degree assault and associated armed criminal action counts. The court ordered these sentences to be served consecutively to the remaining sentences of five years on each of the two counts of class B first-degree assault and three years on each of the two associated counts of armed criminal action. The sentences on the two class B assault counts and the two associated armed criminal action counts were ordered to be served concurrently with each other.

## III. SUFFICIENCY OF EVIDENCE

■ Mr. Whalen does not dispute that there was sufficient evidence to support the count of class A first-degree assault, in that the State presented substantial evidence that Mr. Whalen intentionally shot Corporal Cummines as the corporal stood in Mr. Whalen's bedroom doorway, causing him serious physical injury. Rather, Mr. Whalen claims that, under the above standards, the evidence did not permit the jury to find beyond a reasonable doubt that Mr. Whalen was aware of the presence of the other two officers in the hallway at the time that he shot Corporal Cummines, and thus there was no evidentiary basis for the jury's determination that he attempted to cause those two officers serious physical injury.[3]

A reasonable juror who considered the evidence presented could not find beyond a reasonable doubt that Mr. Whalen had the specific intent necessary to be guilty of class B first-degree assault as to the two officers who followed Corporal Cummines into the hallway. While the evidence shows that the first officer to approach the trailer repeatedly identified himself, this merely shows that Mr. Whalen was aware of the presence of one officer, and he does not claim otherwise. It does nothing to show that he was aware that two other officers had arrived and were present in his home, nor does it show that he was aware that these officers followed Corporal Cummines into the hallway.

No other evidence supplied these missing pieces of proof. Rather, the evidence showed that, after the two backup officers arrived, the officers stood for several minutes in the Whalens' living room discussing how to handle the situation. There was no evidence that they were speaking loudly, or that Mr. Whalen could hear them while he was in his bedroom in another part of the residence. In the absence of such evidence, the inference that he was aware that there were three officers approaching his bedroom door when he fired is extremely strained and speculative at best. A reasonable inference is required.

The evidence also shows that after shooting Corporal Cummines, while negotiating with the police for his surrender, Mr. Whalen shouted that he had shot one person and would shoot another. This evidence tends to negate any inference that he attempted to cause serious physical injury to the other two officers and instead supports the reasonable inference that he was not aware that they were standing near Corporal Cummines or that they were injured. Finally, while the record reflects that just before Defendant fired the gun Corporal Cummines motioned to his fellow officers to stay back, there was no evidence that Mr. Whalen either saw or could see that gesture.

In sum, while there was evidence that Mr. Whalen knew of the presence of one officer and that he saw an officer in the bedroom doorway and shot him, only speculation supports the inference that Mr. Whalen was aware of the presence of the other two officers within range of his shot at Corporal Cummines. While this evidence might be sufficient to show that Defendant *should have known* of the presence of the other two officers, the State acknowledges in this Court that mere proof that Defendant should have known of the presence of the other two officers is not sufficient to support the judgment for class B first-degree assault as to those two officers.[4]

---

3. Mr. Whalen does raise two other errors in regard to his conviction of this count of class A assault, which are addressed in sections IV and V.

4. *State v. Stewart,* 811 S.W.2d 805 (Mo.App.

To the contrary, section 565.050.1, which sets out the elements of first-degree assault, specifically states that "[a] person commits the crime of assault in the first degree if he *attempts* to kill or knowingly causes or *attempts* to cause serious physical injury to another person" (emphasis added). In *Withrow*, this Court recently held that one attempts to commit an offense when:

> *with the purpose* of committing the offense, he does any act which is a substantial step towards commission of the offense. A **'substantial step'** is conduct which is strongly corroborative of the firmness of the actor's *purpose* to complete the commission of the offense.

8 S.W.3d at 78 (italicized emphasis added). This definition of attempt, set out in section 564.011, applies "regardless whether the attempt is under sec. 564.011 or under separate provisions proscribing attempting a specified crime." *Id.* at 80. As this Court noted in the appendix to *Withrow*, this includes use of the word "attempt" in section 565.050, the first-degree assault statute. Therefore, in order to be found guilty of first-degree assault for attempting to kill or attempting to cause serious physical injury, one must, with the purpose of committing that offense, take a substantial step toward committing it.

Section 562.016.2 defines what mental state is required in order to find that a person acted purposefully. It states, "[a] person acts *purposely; or with purpose,* with respect to his conduct or to a result thereof when it is his conscious object to engage in that conduct or to cause that result." § 562.016.2 (emphasis added).

*State v. Gonzales,* 652 S.W.2d 719(Mo.App. W.D.1983), explains what this definition means in the context of the first-degree assault statute as follows:

> There emerges here a clear requirement that conviction of an attempt to kill or to cause serious physical injury requires proof of a very specific intent on the part of the actor to accomplish that objective. That intent has been described in various ways. The statute uses the language "a firm purpose." In the comments upon § 5.01 of the Model Penal Code ... [it is stated]:
>
> As previously stated, the proposed definition of attempt follows the conventional pattern of limiting this inchoate crime to purposive conduct. In the language of the court, there must be "intent in fact" or "specific intent" to commit the crime allegedly attempted.

*Id.* at 722. In other words, a defendant has to act purposefully as to the person defendant is charged with assaulting.

By stating that a defendant must act purposely or with purpose as to the result of his or her conduct, this Court does not mean to suggest that the actor must be specifically aware of the name of the person injured or that the actor must have specifically decided to injure each particu-

---

E.D.1991), can be read to approve of submission of first-degree assault merely upon proof that defendant should have known that his conduct might result in injury, for it stated that the fact that "defendant either contemplated or should have contemplated the presence of [victim's] wife and family in their home and was therefore sufficient to warrant submission to the jury on the question of intent to commit first degree assault." *Id.* *Stewart* relied on language in *State v. Macone,* 585 S.W.2d 64, 67 (Mo.App. S.D.1979), stat-

ing that a person can be found guilty if he knows that the probable result of his act will be injury to those he *"is otherwise bound to believe are before him."* *Stewart* misreads *Macone.* Considered in context, *Macone* simply stated that when one's conscious object is to engage in conduct one knows will cause a certain result, one has acted purposefully and can be held responsible for the consequences. To the extent that *Stewart* or *Macone* suggest that a "should have known" standard is sufficient, they should no longer be followed.

lar person who was in fact injured or threatened with injury. To act *purposely* means that it is the actor's conscious object to engage in certain conduct or to cause a certain result, not that he or she act with malice. Thus, a person will be guilty of purposely causing or attempting to cause serious physical injury to another if the person consciously engages in conduct that causes such injury or it is his or her conscious object to cause such injury. By contrast, the person will not be guilty of purposely causing or attempting to cause such injury if the person is unaware of the likely presence of the injured person at the time the person acts, although the person may be guilty of criminally reckless or negligent conduct, depending on the state of his knowledge.[5]

Thus, in *State v. Martin*, 342 Mo. 1089, 119 S.W.2d 298, 301 (Mo.1938), persons driving a Chevrolet threw an acid bomb into a taxi they passed. The throwers could clearly see the driver and one passenger, but the evidence did not permit a reasonable inference that they were aware of a third person sitting on the far side of the rear seat. No one was injured. The State only charged the crime of attempting to cause serious physical injury to that third person. *Martin* reversed the conviction because the State did not make a submissible case that the throwers knew of the third person's presence. But, had they

been aware of that person's presence in the car, then they could have been found guilty of assault as to that person by attempting to injure that person, and they could not have avoided liability by saying they "harbored a felonious intent only against another of the group".[6]

Applying these principles to the instant case, Defendant can be found guilty of first-degree assault as to Corporal Cummines, whom he knew was present in the doorway and to whom he caused serious physical injury, and the jury could infer it was his conscious object to cause such injury. But, he cannot be found guilty of first-degree assault as to the other two officers. The evidence is not sufficient to permit the jury to find beyond a reasonable doubt that Mr. Whalen was aware of the presence of the other two officers and that he attempted to cause them serious physical injury at the time that he shot Corporal Cummines or that he acted with the purpose of causing them serious physical injury or purposely engaged in conduct that he was aware would cause them serious physical injury. Accordingly, the judgment as to the class B assaults and the associated armed criminal action counts is reversed.

■ Where, as here, "a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser

5. As Professor Perkins explains the state of mind required to prove attempt:

[A]n attempt to commit any crime requires a specific intent to commit that particular offense. If other elements of an attempt are established 'intent is the crucial question.' One does not attempt to commit a crime by negligently endangering the person or property of another however great the danger or extreme the negligence.

R. Perkins, *Criminal Law*, 573–74 (2d ed. 1969). *See, Gonzales*, 652 S.W.2d at 722.

6. *See also State v. Wansong*, 271 Mo. 50, 195 S.W. 999, 1003 (Mo.1917) (a mistake as to the identity of the victim does not preclude finding defendant guilty of first-degree assault where the evidence showed that he intended to assault the person who was in fact assaulted, he merely thought that the latter was a different person); *State v. Layton*, 332 Mo. 216, 58 S.W.2d 454 (Mo.1933) (where defendant shot into a house intending to kill the person he heard behind the door, he was guilty of an attempt to kill that person, even though he was wrong as to which person was standing behind the door).

offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense." *State v. O'Brien*, 857 S.W.2d 212, 220 (Mo. banc 1993). *Accord*, *State v. Trotter*, 5 S.W.3d 188 (Mo.App. W.D.1999); *State v. Granger*, 966 S.W.2d 27 (Mo.App. E.D.1998). Assault, second degree, is prescribed by statute as a lesser included offense of assault, first degree. *State v. Dailey*, 778 S.W.2d 678, 681–682 (Mo.App. W.D.1989); *State v. Taylor*, 724 S.W.2d 531, 535 (Mo.App. W.D.1986). A person commits assault, second degree, if the person "recklessly causes physical injury to another person by means of discharge of a firearm." Sec. 565.060.5. A person acts "recklessly" with respect to his or her conduct if the person "consciously disregards a substantial and unjustifiable risk that circumstances exist or that a result will follow" from the conduct. Sec. 562.016.4. "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." Sec. 562.021.4, RSMo 1997. A person acts purposefully when the person attempts to commit an offense.

Here, it was undisputed that Mr. Whalen discharged a firearm, the evidence permitted the jury to find that he acted in conscious disregard of a substantial risk of injury to others, and the jury did find that he attempted to cause the officers serious physical injury. Thus, all the elements necessary for conviction of second-degree assault and of armed criminal action as to Officer Taylor and Deputy Edler were found by the jury or are undisputed. The trial court is directed to enter judgment reflecting a conviction of second-degree assault and of an associated count of armed criminal action for the assault on Officer Taylor and a separate conviction of second-degree assault and of an associated count of armed criminal action for the assault on Deputy Edler.

## IV. ALLEGED INSTRUCTIONAL ERROR

■ Mr. Whalen also contends that the trial court erred in overruling defense counsel's objection to Instruction 19 in that the instruction created a conclusive presumption that he was responsible for his conduct if he voluntarily became intoxicated. It stated:

> The state must prove every element of the crime beyond a reasonable doubt. However, in determining the defendant's guilt or innocence, you are instructed that an intoxicated or drugged condition from drugs will not relieve a person of responsibility for his conduct.

Mr. Whalen argues that this conflicts with the substantive law doctrine that an actor is not responsible for his conduct if, at the time of that conduct, he suffers from a mental disease or defect and negates his affirmative defense of not guilty by reason of mental disease or defect because use of drugs caused him to be psychotic. These contentions are rejected.

■ Rule 28.02(c) states that when an MAI–CR 3d instruction or verdict form is applicable, that instruction or verdict form "shall be given or used to the exclusion of any other instruction or verdict form." Nevertheless, the "MAI–CR and its Notes on Use are 'not binding' to the extent they conflict with the substantive law." *State v. Carson*, 941 S.W.2d 518, 520 (Mo. banc 1997).

Here, however, Mr. Whalen has failed to cite any case law in support of his contention that Instruction 19 conflicts with the substantive law of non-responsibility due to mental disease or defect, and no such conflict exists. As such, the trial court properly submitted Instruction 19. Fur-

ther, Dr. Rabun testified that Mr. Whalen suffered from an amphetamine-induced psychotic disorder, and Mr. Whalen was allowed to submit and argue his instruction on non-responsibility due to mental disease or defect. It is not apparent how this affirmative defense, submitted and argued, was rendered impotent by Instruction 19. No error occurred.

## V. CHANGE OF VENUE

 Defendant also contends that the trial court erred and abused its discretion in overruling his motion for change of venue for cause resulting from extensive pretrial publicity. He claims that this publicity so permeated the Jefferson County venire panel that a jury could not have decided the case solely on the evidence presented. He argues that the court therefore committed prejudicial error in denying his motion for change of venue.

 "The decision to grant or deny a change of venue motion for cause is a matter of trial court discretion, and its ruling will not be reversed absent an abuse of discretion." *State v. Kinder*, 942 S.W.2d 313, 323 (Mo. banc 1996), *cert. denied*, 522 U.S. 854, 118 S.Ct. 149, 139 L.Ed.2d 95 (1997). A trial court abuses its discretion in denying a change of venue "when the record shows that the inhabitants of the county are so prejudiced against the defendant that a fair trial cannot occur there." *State v. Feltrop*, 803 S.W.2d 1, 6 (Mo. banc 1991). The relevant question is not whether there was publicity surrounding the crime, or whether the prospective jurors in a case remembered the publicity or the crime; the critical question is whether the jurors had such fixed opinions that they could not impartially judge the defendant's guilt. *State v. Leisure*, 749 S.W.2d 366, 376 (Mo. banc 1988), *cert.*

*denied,* 506 U.S. 923, 113 S.Ct. 343, 121 L.Ed.2d 259 (1992).

The trial court did not abuse its discretion here in determining that the jury venire was not so prejudiced against the Defendant that a fair trial could not occur. First, Defendant's trial did not take place until February 1999, over thirteen months after the incident in question. Second, the court and both attorneys thoroughly questioned prospective jurors concerning their views about the case and identified those who were affected by pretrial publicity. In fact, the trial judge dismissed ten venirepersons for cause on the court's own motion based upon statements they made in response to questions about pretrial publicity. While Mr. Whalen argues that the court should also have dismissed jurors Ebert and Naucke, it was not required to do so. As Mr. Whalen specifically points out in his brief, although they acknowledged that they had previously discussed the case and their opinions about the events with other individuals, they also stated during voir dire that they had not made up their minds about the case. They and the other jurors who served indicated that they could be unbiased and impartial. As such, the court did not abuse its discretion in denying Defendant's motion for change of venue.

## VI. CONCLUSION

The judgment with respect to class A assault and the associated armed criminal action count is affirmed. The judgment with respect to the two counts of class B assault and the two associated armed criminal action counts is reversed. The case is remanded for entry of judgment of conviction and sentencing on two counts of second-degree assault and two associated counts of armed criminal action as to the two other deputies.

LIMBAUGH, C.J., WHITE and WOLFF, JJ., concur; PRICE, J., concurs in part and dissents in part in separate opinion filed; HOLSTEIN and BENTON, JJ., concur in opinion of PRICE, J.

PRICE, Judge, concurring in part and dissenting in part.

I concur in the affirmance of the assault conviction and corresponding armed criminal action conviction with respect to officer Cummines. I dissent as to the reversal of the convictions relating to officers Taylor and Edler.

With respect to officers Taylor and Edler, the jury was required to determine if Whalen acted purposefully in attempting to kill or cause serious physical injury to them. The majority holds that the evidence was insufficient for the jury to find that Whalen was aware of the presence of Taylor and Edler in the home. On a challenge to the sufficiency of the evidence, this Court is bound to review "all evidence and inferences drawn therefrom in the light most favorable to the verdict, and [disregard] all contrary inferences." *State v. Knese*, 985 S.W.2d 759, 769 (Mo. banc 1999). In accordance with this standard of review, I believe the judgment based upon the jury's verdict should be affirmed.

The evidence showed that the officers spent several minutes in the home's living room, discussing how to handle the situation, prior to approaching the bedroom where Whalen was located. It also showed that the officers in the living room could hear Whalen talking and yelling in the bedroom. If they could hear Whalen, it could be inferred that he could hear them. This inference is reinforced by evidence that Whalen shouted various demands to the officers in the living room. Whalen would not have done this had he not heard the officers.

Also, at the time Whalen shot Cummines, Cummines was standing in the center of the doorway. Taylor and Edler were close enough to Cummines to feel a flash of hot air from the discharge of Whalen's shotgun. Taylor testified that the hallway in which the officers were standing was lit. Edler testified that the bedroom was lit. From this evidence, the jury could reasonably have inferred that Taylor and Edler, standing near Cummines in the confined space of a lit hallway, were visible to Whalen when he fired his shotgun.

Finally, the evidence showed that just before Cummines was shot he stopped in the doorway of the bedroom and put his hand up to signal Edler and Taylor to stop. This would have communicated the presence of the other officers to Whalen. Whalen himself did not testify. There was no direct evidence what Whalen saw. Although the majority states that there was "no evidence" that Whalen saw or could see this gesture, this is merely drawing an inference contrary to the jury's verdict. It was not only permissible, but even more it was reasonable, for the jury to infer that Whalen, who was able to see Cummines standing in the doorway well enough to shoot him, could also have seen Cummines make this gesture to the other officers.

Simply put, viewed in the light most favorable to the verdict, and disregarding all contrary inferences, the evidence presented was sufficient for the jury to reasonably find, as it did, that Whalen was aware of officers Taylor and Edler and that it was his conscious object to attempt to kill or cause serious physical injury to all the victims when he discharged his shotgun into the hallway.

I would affirm the judgment of the trial court.