**STATE of Missouri, Respondent,**

v.

**Jason STUFFLEBEAN, Appellant.**

**ED 104189**

Missouri Court of Appeals,
Eastern District,
**DIVISION FOUR.**

Filed: April 25, 2017

Samuel E. Buffaloe, Columbia, MO, for appellant.

Joshua D. Hawley, Evan J. Buchheim, Jefferson City, MO, for respondent.

## Introduction

Gary M. Gaertner, Jr., Judge

Jason Stufflebean (Defendant) appeals the judgment entered upon his conviction for felony driving while revoked or suspended. This case turns on how much evidence the State must produce in order to prove that a defendant is criminally negligent with respect to knowledge that the State had revoked or suspended his or her driving privileges. While criminal negligence is a very low standard, this standard still requires the State to produce some evidence of a defendant's mental state to convict a defendant of driving while revoked or suspended. Because the State failed to produce sufficient evidence of Defendant's mental state to convict Defendant, we must reverse.

## Background

On October 29, 2014, at about 4:00 p.m., Officer Robby Ryan (Officer Ryan) was driving in a parking lot, where he observed Defendant driving a car. Officer Ryan was not on duty at the time, but he recognized Defendant and believed Defendant's driver's license was suspended. Officer Ryan called the Warren County Police Dispatch and asked them to check the license plate number on the vehicle Defendant was driv-

ing and to confirm Defendant's driving status. The Warren County Police Dispatcher confirmed that Defendant's license was suspended. Because Officer Ryan was off-duty at that time, he called and informed another officer of what he had observed rather than making a traffic stop.

The State charged Defendant as a prior and persistent offender with one count of driving while revoked or suspended, a class D felony based on Defendant's prior convictions for driving while revoked or suspended. At trial, the State presented Officer Ryan's testimony as well as a certified copy of Defendant's driving record from the Department of Revenue (State's Exhibit 15), showing two separate "Child Support Enforcement Suspensions." These entries became effective on October 4, 2014, and October 5, 2014, respectively, and the driving record showed both suspensions were still active on October 29, 2014, when Officer Ryan observed Defendant driving.

The jury found Defendant guilty of driving while revoked or suspended, and the trial court sentenced Defendant to a term of three years' imprisonment. This appeal follows.

## Discussion

■ Defendant's sole point on appeal is that the trial court erred in entering judgment against him because the evidence was insufficient from which the jury could find that he acted with criminal negligence with respect to the knowledge of the fact that the Department of Revenue had suspended his driving privileges. We agree.

■ Our review of challenges to the sufficiency of the evidence requires us to determine "whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt." State v. Nash, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc 2010)) (internal quotations omitted). We do not re-weigh the evidence, but "give[ ] great deference to the trier of fact." Nash, 339 S.W.3d at 509 (quoting State v. Chaney, 967 S.W.2d 47, 52 (Mo. banc 1998)). At the same time, we "may not supply missing evidence, or give the State the benefit of unreasonable, speculative or forced inferences." State v. Whalen, 49 S.W.3d 181, 184 (Mo. banc 2001) (internal quotation and alteration omitted).

Here, Section 302.321.1, RSMo. (Supp. 2011), required the jury to find that Defendant "act[ed] with criminal negligence with respect to knowledge of the fact that [his] driving privilege ha[d] been cancelled, suspended, or revoked." Section 562.016.5, RSMo. (2000) states the following:

A person "acts with criminal negligence" . . . when he or she fails to be aware of a substantial and unjustifiable risk that circumstances exist or a result will follow, and such failure constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation.

Defendant argues that the only evidence of his suspension in this case was his driving record, that there was no evidence that he had any knowledge that his driving privileges had been suspended by the Children's Division, and that the State failed to produce evidence that he was unreasonable in failing to be aware of the risk that his driving privileges were suspended.

The State relies on State v. Ise for the proposition that "a driving record showing expiration or revocation is sufficient under [Section 302.321.1] to prove knowledge or criminal negligence with respect to knowledge." 460 S.W.3d 448, 456 (Mo. App. W.D. 2015) (citing cases). We agree that in many circumstances a certified driving record is

sufficient. However, this present case reveals that a certified driving record alone is not always sufficient evidence of criminal negligence with respect to knowledge. Additionally, in every case addressing criminal negligence under Section 302.321.1, the driving status alone, as shown on the driving record, has never provided the sole basis for finding a defendant's requisite mental state.

In Ise, the State had entered into evidence not only the defendant's record, showing points sufficient to revoke his license, but also a revocation letter sent to the defendant. Id. at 456–57. In State v. Collins, relied on by the Ise court, the State had introduced a certified copy of the defendant's driving record, which showed 30 continuous revocations, similar in nature, and no eligibility for reinstatement until 2018, as well as evidence that the defendant had received a "non-driver" identification card two months prior to the incident in the case. 413 S.W.3d 689, 697–700 (Mo. App. S.D. 2013).[1]

In Ise and Collins, the State offered evidence in addition to the defendants' driving records that demonstrated an unreasonable ignorance of the risk their driving privileges were suspended: 1) notification of their suspension, or 2) obtaining a non-driver identification card. However, the defendants' driving records alone showed they committed a series of driving offenses which accumulated sufficient points to trigger suspension of their driving privileges. Their knowledge of the past commission of these offenses allows a court or jury to infer that these defendants unreasonably failed to be aware of the risk that their driving privileges were suspended or revoked as a consequence of the accumulation of points from these known offenses.

However, here, Defendant's driving record did not reveal the commission of driving offenses sufficient to require a suspension based on accumulation of points. Here, Defendant's driving record showed the following:

- 1995–2009: 22 violations for driving while revoked or suspended; all suspensions/revocations due to point accumulation driving offenses or failure to maintain insurance;
- 2011: Convicted of most recent driving while revoked or suspended, for which Defendant was arrested in 2009;
- June 1, 2012: Eligible for reinstatement of driving privilege;
- May 31, 2013: Driving privilege reinstated; and
- October 4–5, 2014: Child Support Enforcement Suspensions entered.

Unlike the defendants in Ise and Collins, Defendant here had reinstated driving privileges for over a year and had committed no driving offenses that would have

---

1. The other cases discussing a defendant's mental state for driving while revoked or suspended do so under older versions of the applicable statutes requiring a mental state of either knowledge or reckless disregard of the fact that the defendant's license was revoked or suspended. See State v. Huff, 879 S.W.2d 696, 698 (Mo. App. E.D. 1994) (noting mental culpability where defendant knew or should have known of driving status; finding sufficient evidence where State introduced defendant's driving record and letter from Department of Revenue notifying defendant of revocation); State v. Hurd, 877 S.W.2d 644, 645 (Mo. App. W.D. 1994) (noting State had to prove defendant knew license was revoked or suspended; inferred knowledge from defendant's driving record and guilty plea resulting in 12–point assessment against his driver's license); State v. Brown, 804 S.W.2d 396, 398 (Mo. App. W.D. 1991) (requiring evidence of knowledge; found evidence sufficient where defendant had been stopped by police two months earlier and notified of license status).

triggered his awareness or knowledge of a risk that the State could revoke or suspend his driving privileges. Additionally, Defendant had never had a child support enforcement suspension or revocation on his record prior to October 4, 2014. Thus, we cannot yet infer he was habitually delinquent in paying child support and receiving subsequent license suspensions, demonstrating he unreasonably failed to be aware of the risk here that his driving privilege could be suspended or revoked for failing to pay child support.

The State argues that the jury could infer from the suspension alone that Defendant was delinquent in child support payments and therefore was criminally negligent with respect to knowledge of the consequences, but there was no evidence of such child support delinquency at trial. Unlike the situation in which the driving record shows both convictions for driving offenses and then revocation due to points accumulated from those driving offense violations, there is no separate evidence of the underlying reason for the child support suspension here giving rise to the conclusion Defendant was criminally negligent in failing to be aware of the suspension or revocation.[2]

Additionally, there was no evidence that either the Children's Division or the Director of Revenue undertook their respective duties to notify Defendant that his driving privileges were being suspended. The State argues that here the jury could infer that the Child Support Enforcement Division sent notice to Defendant of its decision to suspend his license pursuant to

Section 454.1003, RSMo. (Supp. 2010) (requiring notice of license suspension when suspended due to failure to pay child support), and that the Director of Revenue had also thereafter sent notice of suspension of his license pursuant to Section 454.1008, RSMo. (2000) (requiring Director to notify person of license suspension), given the fact that these statutes require such notification from the State. The State asks us to infer that governmental departments always follow the law and its statutory mandates. This is a bridge too far. The State only minimally needed to introduce a copy of the letter from either the Children's Division or the Department of Revenue to Defendant's last known address in order to prove Defendant's criminal negligence with respect to knowledge that his driving privilege was revoked or suspended, even if Defendant claimed he never had received either letter. See Ise, 460 S.W.3d at 457 (noting under standard of criminal negligence with respect to knowledge, State does not have to prove Defendant actually received revocation letter sent by Department of Revenue).

Because the administrative suspension here was based on child support delinquency, we are simply in a different category than a suspension due to points documented on a person's driving record. If a person claims not to know about a suspension due to points for driving violations, it is proper to infer he or she is criminally negligent with respect to knowledge of a consequence for driving offenses he or she in fact committed and therefore knows about. However, here, the "Child Support Enforcement Suspensions" in Defendant's

2. We do not suggest the State had to prove Defendant was delinquent in child support payments in order to convict Defendant of driving while revoked or suspended here. However, evidence that Defendant was sufficiently delinquent in his child support payments could have supported an inference that he was criminally negligent with respect to

knowledge of the consequence of his known delinquency in payments, in the same way a list of driving offenses accumulating points can support an inference that such defendant is criminally negligent with respect to knowledge of the risk those known actions that accumulated points could lead to suspension or revocation.

driving record come with no accompanying support, such as evidence that Defendant was sufficiently delinquent in child support payments or had been notified that his driving privilege could be or had been suspended based on such delinquency. We cannot lay out all the evidence that the State could or should present in driving while revoked or suspended cases. However, here, it was not sufficient to introduce only a certified driving record.[3] Because it was the State's burden to prove Defendant's mental state and we cannot supply missing evidence or speculative inferences, we must grant Defendant's point on appeal.

## Conclusion

We reverse the judgment of the trial court, and we vacate Defendant's conviction.

James M. Dowd, P.J., and Kurt S. Odenwald, J., concur.

---

**3.** It is reprehensible for a person to drive in this state with suspended driving privileges after 22 prior convictions for driving while suspended or revoked. It is imperative that the State punish such recalcitrant offenders. However, due process also mandates that the State put forth a scintilla of evidence sufficient to convict such a person, and basing a criminal conviction solely on an entry in a driving record without some basis for an inference of criminal negligence with respect to the knowledge of the defendant's driving status offends our notions of justice.