

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED106966 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| v. | ) | Case No. 16L6-CR00966-01 |
| | ) | |
| BRIAN K. GARRETT, JR., | ) | Honorable Thomas J. Frawley |
| | ) | |
| Appellant. | ) | Filed: March 3, 2020 |

### Introduction

Brian K. Garrett (Defendant) appeals the judgment entered upon his conviction by jury of three counts of second-degree assault,[1] three counts of armed criminal action, one count of unlawful possession of a firearm, and one count of unlawful use of a weapon. He argues there was insufficient evidence in the record to support the three counts of second-degree assault (and thus the associated charges of armed criminal action) because he fired only one shot at a vehicle containing three passengers, thus the evidence was insufficient to establish he attempted to cause physical harm to all three passengers. He further argues that inconsistencies in the verdict form and the written judgment require reversal of his

---

[1] We note the discrepancy in the trial court's judgment, which denotes three counts of first-degree assault, rather than second-degree assault. We address this discrepancy in response to Defendant's Point IV, *infra*.

convictions. We affirm on the merits, but remand with directions for the trial court to enter a *nunc pro tunc* order to correct the written judgment.

Background

On October 12, 2016, Bobbi Cross drove with her boyfriend at the time, Chris Nantel, to pick up her sister Jessy Cross.[2] Bobbi testified that when they arrived at Jessy's house, Defendant approached Bobbi and asked her to get him marijuana. Bobbi testified she became angry because on a prior occasion, she had given Defendant $150 for marijuana and Defendant kept the money. Bobbi yelled at Defendant and called him names. Bobbi and Chris then went into Jessy's trailer.

Defendant lived in a nearby trailer with K.C. Fry (Fry). Fry testified that when she arrived at her trailer, Defendant was aggravated and kept asking her to go fight the neighbors with him. She declined.

After being in Jessy's trailer for about 40 minutes, Bobbi, Chris, and Jessy got into Bobbi's car to go to the grocery store. Bobbi was in the driver's seat, Chris was in the front passenger's seat, and Jessy was sitting in the back seat behind Chris. As they backed out of the driveway, they saw Defendant outside, and he ran toward the back of Fry's trailer. As the car approached a stop sign, Chris and Jessy saw Defendant run out of the trailer with a gun. Chris said Defendant appeared angry, and Chris asked through the window in a "cocky" manner what Defendant was going to do with the gun. He saw Defendant point the gun at the car and shoot. Jessy yelled to Bobbi that Defendant had a gun and Jessy ducked down in the back seat. The back windshield then shattered. Bobbi had not seen

---

[2] Because two of the victims share the same last name, we refer to them by their first names hereinafter for the sake of clarity and mean no disrespect.

2

Defendant with the rifle, but she heard the sound of a gunshot, the back windshield shattered, and she tried to duck down.

Glass from the windshield came into the car, both in the back seat and in the front seats. Bobbi had shards of glass in her arm, and Jessy was covered in glass. Bobbi testified she went into shock and was shaking. Then she drove away and parked the vehicle. Bobbi, Chris, and Jessy walked back to Jessy's trailer to check on Jessy's children, and Chris called the police. Defendant drove by at some point and asked "if everyone was okay." Then he left and drove to Wentzville. Police arrived and noted that the back window of Bobbi's car was broken and all the glass was inside the vehicle. They took statements from Bobbi, Chris, and Jessy, noting that they were shaking and had small cuts in various places from the glass. Later that night, Fry and Jessica Holt, the owner of the gun Defendant used, drove to Wentzville to pick up Defendant so he could turn himself in to the police.

The State charged Defendant with three counts of first-degree assault, but the jury acquitted Defendant of those charges and found him guilty of the lesser-included offenses of second-degree assault on each count. The jury found Defendant guilty of the remaining charges: three counts of armed criminal action, one count of unlawful possession of a firearm, and one count of unlawful use of a weapon. The trial court sentenced Defendant as a persistent offender to three consecutive terms of 10 years' imprisonment for the second-degree assault convictions, as well as concurrent terms of 30 years for each count of armed criminal action, ten years for unlawful possession of a firearm, and seven years for unlawful use of a weapon, for a total of 30 years' imprisonment. While the verdict forms and sentencing transcript reflect Defendant's three convictions of second-degree

3

assault, the written judgment lists three convictions of first-degree assault rather than second-degree assault.  This appeal follows.

Points I and II

Defendant argues in Point I that there was insufficient evidence from which the jury could find Defendant guilty of three counts of second-degree assault, one for each passenger of the car, because he fired only a single shot into the vehicle.  Defendant argues in Point II that accordingly, he could not have been found guilty of all three associated counts of armed criminal action.  We disagree.

Our review of a challenge to the sufficiency of the evidence focuses on whether there is sufficient evidence from which a reasonable juror could find the defendant guilty of the charged offense beyond a reasonable doubt.  State v. Letica, 356 S.W.3d 157, 166 (Mo. banc 2011).  We view the evidence and reasonable inferences therefrom in the light most favorable to the verdict, disregarding all evidence to the contrary.  Id.

Here, the State charged Defendant with three counts assault in the first degree, but the jury convicted Defendant on each count of the lesser-included offense, assault in the second degree.  Specifically, the jury was required to find Defendant "[a]ttempt[ed] to cause or knowingly cause[d] physical injury to another person by means of a deadly weapon or dangerous instrument."  Section 565.060.1(2), RSMo. (Supp. 2012).  Attempt requires that Defendant, with a purpose to commit the offense, took a substantial step toward commission of the offense.  State v. Whalen, 49 S.W.3d 181, 186 (Mo. banc 2011).  Further, the State had to prove that Defendant "act[ed] purposefully as to the person [D]efendant is charged with assaulting."  Id.  Defendant argues the State could not show

4

he had a specific purpose to injure all three persons in the vehicle, because he fired only one shot toward the vehicle.

However, "[e]vidence of a single gunshot in the direction of multiple human targets can support multiple convictions for assault if the shooter was aware of the high likelihood of hitting multiple targets." State v. McAllister, 399 S.W.3d 518, 522 (Mo. App. E.D. 2013) (affirming conviction of two counts of first-degree assault of law enforcement officer where defendant fired one shot at vehicle containing two officers); see also State v. Gilbert, 531 S.W.3d 94 (Mo. App. W.D. 2017) (finding sufficient evidence to support four counts of first-degree assault of law enforcement officer where defendant shot at line of police vehicles pursuing defendant's vehicle: (1) defendant was aware of presence of other vehicles besides lead vehicle, and (2) by firing shot toward line of vehicles defendant took substantial step toward injuring all officers in all vehicles). The key issues are whether the defendant is aware multiple people are present and, if so, whether the defendant purposely engaged in conduct likely to cause physical injury to all of them. See id.; cf. Whalen, 49 S.W.3d 181, 186 (reversing two of defendant's three convictions of first-degree assault where three officers approached defendant, defendant fired at first officer, but evidence failed to establish defendant was aware of other officers' presence such that he purposely engaged in conduct he was aware would cause them serious physical injury).

Here, testimony from multiple witnesses established Defendant was outside within view when the three victims entered Bobbi's vehicle. Chris testified he spoke to Defendant through the window of the vehicle. The victims saw Defendant run and retrieve a gun and aim it at the vehicle, and afterward Defendant came and asked if everyone was okay. There was sufficient evidence from which the jury could find that Defendant was aware there

5

were three people in the vehicle when he fired the shot toward it. Further, the circumstances merit the conclusion that firing a shot toward the moving vehicle in this manner could cause injury to all three of its occupants. There are a myriad of ways a single shot fired into a moving car can cause injury to its occupants. Had the shot hit Bobbi, the driver, she could have lost control of the vehicle, including unintentionally accelerating the vehicle's speed. Bullets can pass through bodies or ricochet and hit multiple targets. Regardless, injury did in fact result in that the shattered glass from the windshield caused cuts on each of the victims.

Therefore, we find there was sufficient evidence in the record from which the jury could find Defendant guilty of three counts of second-degree assault beyond a reasonable doubt. Accordingly, because Defendant's second point depends on his argument in Point I, we find sufficient evidence supports Defendant's three convictions for armed criminal action. Points I and II denied.

Point III

Defendant argues the trial court plainly erred in finding him guilty and sentencing him for one count of armed criminal action (ACA) because the jury signed the incorrect verdict form, which required them first to find Defendant guilty of first-degree assault. We disagree.

Defendant notes that his point has not been preserved for review, thus we may review only for plain errors affecting substantial rights, resulting in manifest injustice or a miscarriage of justice. Rule 30.20. Plain errors are errors which are evident, obvious, and clear. State v. Hunt, 451 S.W.3d 251, 260 (Mo. banc 2014). If we find a plain error

6

affecting substantial rights on the face of the record, we proceed to determine whether the error resulted in manifest injustice or a miscarriage of justice. Id.

Here, the jury returned guilty verdicts for three counts of second-degree assault, and three associated counts of ACA. The verdict form the jury returned for the first count of ACA, Count II, stated that the jury had to find Defendant guilty of first-degree assault, whereas the other two verdict forms returned for ACA stated the jury had to find Defendant guilty of second-degree assault. The trial court sentenced Defendant for three counts of second-degree assault and three associated counts of ACA.

While the first ACA verdict form is incorrect and is technically inconsistent with the jury's acquittal of Defendant for first-degree assault, we find no manifest injustice or miscarriage of justice resulted here. Second-degree assault can be the underlying felony for ACA, and the jury used the correct forms for the other two counts of ACA associated with second-degree assault. Given the totality of the jury's verdict, it is clear they intended to convict Defendant of three counts of second-degree assault and three associated counts of ACA, for which Defendant was correctly sentenced. As discussed in Points I and II, there was sufficient evidence in the record for all six convictions. Point denied.

Point IV

Defendant argues the trial court plainly erred in entering judgment against him for three counts of first-degree assault because the jury acquitted him of first-degree assault. Defendant requests remand for correction of the judgment *nunc pro tunc*, pursuant to Rule 29.12(c). We agree.

It is clear from both the verdict forms and sentencing transcript that the jury intended to convict Defendant of three counts of second-degree assault in Counts I, III, and

7

V, and that the trial court sentenced Defendant accordingly. Therefore, the trial court's written judgment, listing three convictions of first-degree assault, is a clerical error. Rule 29.12(c) permits the trial court to make corrections to clerical errors at any time. Thus, we remand to the trial court with instructions to correct its judgment *nunc pro tunc* to reflect the correct offenses for which Defendant was convicted and sentenced in Counts I, III, and V. Point granted.

## Conclusion

There was sufficient evidence to support Defendant's convictions for three counts of second-degree assault and three counts of ACA, and we find no manifest injustice or miscarriage of justice resulted from the jury's use of the incorrect verdict form for one count of ACA. However, the trial court's judgment does contain a clerical error, thus we remand to the trial court with instructions to correct its judgment pursuant to Rule 29.12(c) to reflect Defendant's convictions in Counts I, III, and V for assault in the second degree, rather than assault in the first degree. In all other respects, the judgment is affirmed.

Gary M. Gaertner, Jr., Judge

James M. Dowd, P.J., concurs.
Robin Ransom, J., concurs.        .

8