**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Kenneth DAVIS, Defendant-Appellant.**

**No. 13223.**

Missouri Court of Appeals,
Southern District,
Division One.

July 31, 1984.

Motion for Rehearing or to Transfer to
Supreme Court Denied Aug. 21, 1984.

Application to Transfer Denied
Oct. 9, 1984.

John D. Ashcroft, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

David Robards, Public Defender Commission, Joplin, for defendant-appellant.

TITUS, Judge.

A Barton County jury found defendant guilty of 13 counts of felonious stealing by deceit. § 570.030 [1]. In accordance with the verdicts, the court sentenced defendant to consecutive terms of four years' imprisonment on one count, three years on another count and two years on each remaining count. Defendant appealed.

Alice Cale, a widow who was 74 years old in January 1983 when the cause was tried, lived alone on a farm northwest of Liberal. Albeit defendant claimed to Mrs. Cale they had met before, Mrs. Cale had no remembrance of defendant until in early 1980 when he started making frequent visits to her home. After many such visits, Mrs. Cale talked of traveling and selling her home. Defendant urged her to do so, suggesting they should marry and travel together. Mrs. Cale declined the marriage proposal but said she would be defendant's friend. On May 23, 1980, *Count I*, defendant appeared at the Cale residence with a letter concerning the renting of 24 acres of railroad pasture land for $240. Defendant represented he had some calves to pasture on the property but was short on rent money. Mrs. Cale gave defendant a $240 check with his assurance he would pay 20% interest on the loan. A few days later on June 2, 1980, *Count II*, defendant appeared wanting to borrow an additional $900 to buy more calves to put on the 24 acres. Mrs. Cale gave him a check for the requested amount and defendant said he would pay 25% interest on the second loan. Defendant had previously given Mrs. Cale a

note for the $240 loan. When the second loan was made he added to the original note that he had borrowed the $900 at 25% interest. On June 19, 1980, *Count III*, defendant returned asking Mrs. Cale for money for additional calves because the ones he had "weren't touching the grass." She gave him a $1,000 check and marked "calves" on it. Defendant wrote out another note for the $1,000 loan.

On June 28, 1980, *Count IV*, defendant arrived at Mrs. Cale's home driving a "pretty junky old car." Defendant, representing himself as a carpenter, said he needed a truck to haul his tools and displayed some newspaper advertisements which indicated he could buy such a vehicle for $600. He told Mrs. Cale that with the truck he could get to and from work and commence paying off his obligations to her. Mrs. Cale gave defendant a check for $600. Defendant returned July 3, 1980, *Count V*, and borrowed an additional $365 to buy the truck.

Defendant told Mrs. Cale on July 14, 1980, *Count VI*, that he was in need of a hernia operation. He said he had some money but needed to borrow an additional $1,000. Mrs. Cale gave him a check in that amount. On July 22, 1980, *Count VII*, defendant told Mrs. Cale the doctor had discovered he had a double hernia and that he would need to borrow an additional $1,234 on that account. Mrs. Cale gave him a check in that sum. The following day July 23, 1980, *Count VIII*, defendant borrowed $210 via check from Mrs. Cale upon the representation that he needed that sum for medicine while hospitalized. On August 4, 1980, *Count IX*, Mrs. Cale loaned defendant $200 for living expenses he would incur after surgery. On the same day, *Count X*, she gave him a $1,350 check for hay which defendant said he would buy and haul to her when he recovered from his operation. The only hay Mrs. Cale received from defendant was one bale. Defendant went to Mrs. Cale's home

---

**1.** References to statutes and rules are to V.A. M.S. and V.A.M.R.; references to MACH–CR and MAI–CR2d refer to Missouri Approved Charges—Criminal, and Missouri Approved Instructions—Crim.2d Ed.

on August 14, 1980, *Count XI*, with a bale of hay for her inspection stating that an old farmer was retiring and wanted to empty his barn. Mrs. Cale gave the defendant $1,600 for 20 tons of that hay. Next defendant told Mrs. Cale he had a lake shore home on which he owed a mortgage and back taxes. He proposed clearing the title and selling the property so that he could pay Mrs. Cale what he owed her. Later Mrs. Cale sold her cattle and on September 3, 1980, *Count XII*, gave the defendant a $3,882.04 check, endorsed by her, which she had received in part payment of her livestock. On September 9, 1980, *Count XIII*, Mrs. Cale gave the defendant her check for $550 to finish clearing the title to the lake property.

As already noted, defendant was charged and convicted of 13 counts of felonious stealing by deceit for matters occurring on the enumerated dates. Mrs. Cale testified that after the last enumerated date, September 9, 1980, she ceased believing defendant's avowed needs for loans and this, apparently, was the reason defendant had not been tried for stealing by deceit in securing eight additional loans in the total sum of $2,385 between January 31, 1981, and October 30, 1981. The witness' explanation for making the additional loans after she stopped believing defendant was that she feared what defendant might do if she refused.

Three other widowed ladies appeared as witnesses for the state and recounted experiences with defendant similar to those had by Mrs. Cale. Each, as did Mrs. Cale, acknowledged receiving what were, in relation to the amounts loaned, infinitesimal repayments from defendant which were not sufficient to pay the interest on the loans. As he did with Mrs. Cale, defendant "in a fashion" proposed marriage to one of the additional witnesses before he ended up owing her $3,386.50. In late 1979 and early 1980, just prior to defendant's dealings with Mrs. Cale, one of the additional witnesses had loaned defendant $48,000 on various pretexts. The third additional witness made loans totaling $5,944 to defendant from the middle of August 1980 to the

middle of December 1980 or during the same time he was obtaining money from Mrs. Cale. It is interesting that the last mentioned witness made loans to defendant to pay taxes, attorney fees and for improvements on his lake shore property so it could be sold and the loans repaid, which were the same reasons defendant advanced to Mrs. Cale for obtaining loans of $4,432.04 from her.

■ Per § 570.030.1: "A person commits the crime of stealing if he appropriates property ... of another with the purpose to deprive him thereof ... by means of deceit...." The essential elements of stealing by deceit under the statute are: (1) There must be an *appropriation* (2) *of property* (3) *of another* (4) with the *purpose to deprive* the other thereof (5) accomplished *by means of deceit*. 41 V.A.M.S. p. 446. As defined in § 570.010(7) " 'Deceit' means purposely making a representation which is false and which the actor does not believe to be true and upon which the victim relies, as to a matter of fact, law, value, intention or other state of mind."

■ In substance, defendant cedes there was proof that defendant purposely made a representation as set forth in each of the 13 counts of the information. However, in his first point relied on defendant claims there was no substantial evidence to support the verdicts because the state failed to prove the representations were false, that defendant did not believe them to be true and that Mrs. Cale relied thereon as to a matter of fact, law, value, intention or other state of mind. Under the undisputed testimony of Mrs. Cale as relates to the 13 counts, there was more than enough evidence for the jury to find, as it obviously did, that Mrs. Cale relied upon defendant's representations. Ergo, we are relegated to determining whether there was substantial evidence to support a finding that defendant's representations were false and, when made, defendant did not believe them to be true.

■ When testing whether there was substantial evidence to support a verdict of

guilty, the court on appeal considers the evidence and all favorable inferences in the light most favorable to the state and disregards all contrary evidence and inferences. *State v. Williams*, 623 S.W.2d 552, 553[2] (Mo.1981). Any element of a crime may be established by circumstantial evidence and albeit the circumstances need not be absolutely conclusive of guilt, they must, nevertheless, be inconsistent with defendant's innocence. *State v. Woods*, 637 S.W.2d 113, 119[16–17] (Mo.App.1982).

Whether defendant's representations to Mrs. Cale were false and defendant did not believe them to be true when made is a matter of proving the subjective intent of the defendant at the time he made his representations and promises. Subjective intent is rarely capable of direct proof, so that the guilty intent may be proved by means of circumstantial evidence. To prove the mens rea, the state may introduce evidence of similar incidents whereby defendant obtained money from other victims by making the same or similar promises. Underlying the admission of such evidence is the theory that if defendant consistently makes the same or similar promises to a number of victims and after obtaining the victims' money consistently fails to perform, it may be fairly inferred that no mischance could reasonably explain all of the failures of performance. The inference is thus raised that defendant's representations, particularly in the situations in which he has been charged, were false when made and that defendant did not then believe them to be true. *State v. Inscore*, 592 S.W.2d 809, 811[4–6] (Mo. banc 1980). The evidence at trial, as previously herein summarized, of the numerous similar transactions whereby defendant obtained loans upon promises to pay later then failed to do so and failed to perform his promises was sufficient to establish defendant's intent to steal by deceit. Defendant's first point relied on is denied.

In his second point relied on defendant contends the trial court erred in giving instructions 5 through 17, verdict-directors for each of the 13 information counts, be-

cause none of them required the jury, before declaring defendant guilty, to find that at the time of making the representations defendant did not believe them to be true. Defendant's brief admits this allegation of error was not preserved as trial counsel made no objection to any of said instructions at trial. Counsel now representing defendant, different from trial counsel, urges reversal of the convictions under the plain error standard of Rule 29.-12(b) because of instructional error.

Each complained of instruction was patterned after MAI–CR2d 24.02.2. All 13 instructions are identical except for the wording of paragraphs "First" and "Second" thereof. For example, Instruction No. 5 reads: "As to Count I, if you find and believe from the evidence beyond a reasonable doubt: First, that on or about the 23rd day of May, 1980, in the County of Barton, State of Missouri, the defendant appropriated money in the sum of $240.00 owned by Alice Cale, and Second, that the defendant did so by means of deceit by asking to borrow from Alice Cale the sum of $240.00 after representing to her that he needed the money to pay rent on 24 acres of grassland he wanted to lease from the railroad, *that the representations were false, purposely and knowingly made* and Alice Cale, relying on defendant's false representations, delivered to defendant her personal check in the sum of $240.00, and Third, that the defendant in such manner took such property for the purpose of withholding it from the owner *permanently*, and ...." (Emphasis supplied). The emphasized words were the same in each of the instructions concerning which defendant now complains.

Under Rule 29.12(b), instructional errors will not be considered plain error unless the appellate court finds the trial court has so misdirected the jury upon the law as to cause or produce manifest injustice or a miscarriage of justice [*State v. Ealey*, 624 S.W.2d 465, 467[1] (Mo.App. 1981) ] and the ultimate test of accuracy for an instruction is whether it precisely follows substantive law and whether it will

be correctly understood by a jury composed of average lay people. *State v. Crews,* 585 S.W.2d 131, 134[3] (Mo.App.1979).

■■■ As previously observed, § 570.-010(7), supra, defines "Deceit" as "purposely making a representation which is false and which the actor does not believe to be true." Defendant does not challenge that the representations were false. Rather he argues that when the false representations were made the jury, via the instructions, was not required to determine that defendant did not believe them to be true when made. All such given instructions not only required a finding that "the representations were false", but were "purposely and knowingly made." "Knowingly" is defined "1. in a knowing manner. 2. with knowledge of what one is doing; on purpose." Webster's New World Dictionary of the American Language, College Ed., p. 809. In other words, when defendant made representations which were false he knew what he was doing. An instructional requirement for the jury to find that defendant knew what he was doing when he made the false representations was equivalent to requiring the jury to find that defendant did not believe the representations when made. Furthermore, paragraph Third of the instructions required a finding that when defendant's false representations were "purposely and knowingly made" he took the money "for the purpose of withholding it from the owner permanently." If defendant, when he supposedly borrowed money from Mrs. Cale, took it from her for the purpose of withholding it from her permanently, it would follow that he then did not believe to be true his representations regarding repayment. Defendant's second point is denied.

Akin to his first two points relied on, defendant's last point asseverates trial court error in permitting the state to argue to the jury it could find defendant guilty on all counts if it found that defendant, at the time he obtained the money, did not intend to repay Mrs. Cale because none of the information charges alleged that defendant had falsely represented his intention to re-

pay and because none of the verdict directing instructions required a finding that defendant had no intent to repay when he obtained the money. Because of this, defendant says the state's argument was not directed to an issue in the case and amounted to misdirecting the jury on the law of the case.

Basically, the contentions under this point appear to be that the information and instruction relating thereto failed to allege and require a finding with definiteness that defendant misrepresented his intention to repay. The charges averred that defendant appropriated described property, i.e., check or money, owned by Mrs. Cale with the purpose to deprive her thereof by deceit, followed by a description of what defendant's deceit and representations were and an allegation that the representations were false and were purposely and knowingly made by defendant for the sole purpose of obtaining from Mrs. Cale the particular sums of money in question. As seen under point two, the instructions and charges were virtually the same.

■■■■ The charges and instructions alleged and required a finding that defendant "appropriated" the money. "Appropriate" is defined: "1. to take for one's own or exclusive use; hence, 2. to steal." Webster's New World Dictionary of the American Language, College Ed., p. 72. Hence, it is axiomatic that if a person appropriates property of another he takes or steals it for his own or exclusive use with no intent to repay or return it. Words such as "appropriated" which are common everyday terms need no definition and the failure to define them does not constitute prejudice. *State v. Rodgers,* 641 S.W.2d 83, 85[3] (Mo. banc 1982); *State v. Siekermann,* 367 S.W.2d 643, 649[10] (Mo.1963). Thus, when the informations and instructions employed the term "appropriated" they were sufficient to charge and require a finding of defendant's misrepresentation of his avowed intention to repay. The information is faithfully patterned after MACH–CR 24.02.2 for stealing by deceit and the instructions ape MAI–CR2d 24.02.2. While pattern charges

contained in MACH–CR are recommended rather than mandatory, deviations therefrom are not to be treated lightly or condoned [*State v. Palmer,* 634 S.W.2d 521, 524[5] (Mo.App.1982)] and when the proper approved instructions are given, appellate courts are powerless to declare them erroneous. *State v. Frank,* 639 S.W.2d 209, 211[2] (Mo.App.1982). Defendant's third point relied on is denied and the judgment nisi is affirmed.

FLANIGAN, P.J., and GREENE and CROW, JJ., concur.