**Kenneth DAVIS, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 14808.**

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 30, 1987.

Motion for Rehearing and Transfer
Denied and Overruled
Feb. 18, 1987.

Application to Transfer Denied
March 17, 1987.

Janet M. Thompson, Columbia, for movant-appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

MAUS, Judge.

Movant was convicted of 13 counts of felonious stealing by deceit in violation of § 570.030. He was sentenced to four years on one count, three years on another count and two years on each of the remaining 11 counts, all to be served consecutively. Defendant's conviction was affirmed by this court on direct appeal. *State v. Davis*, 675 S.W.2d 652 (Mo.App.1984). He then instituted this proceeding by a motion under Rule 27.26. An evidentiary hearing was held and his motion was denied. He presents one point on appeal.

A statement of the factual background of his convictions may be found in *State v. Davis, supra.* A concise version of those facts follows. In early 1980, movant somehow ingratiated himself to Mrs. Alice Cale, a 71–year-old widow living alone on a farm near Liberal. Movant began visiting Mrs. Cale, insisting that she knew him, though she had no such recollection. Movant urged Mrs. Cale to sell her home, marry him and travel with him. Although Mrs.

Cale refused this offer, she did write several checks to defendant in response to his requests for money for various purposes. In the time span from May 23, 1980 to September 9, 1980, Mrs. Cale loaned defendant approximately $13,581. He executed some notes and promised to pay interest at the rate of 25%. Movant represented to Mrs. Cale that the money was needed for various specific purposes. Each check was cashed and not deposited. At the trial, three other widowed ladies testified to similar experiences with the defendant.

■ By his one point on appeal the movant contends the trial court erred in finding that he was not denied effective assistance of counsel. It is appropriate to state three of the principles by which that contention is to be measured. The basic two-part test is stated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, movant must show counsel did not exhibit the customary skill and diligence exercised by a reasonably competent attorney under similar circumstances. Second, he must "show that there is a reasonable possibility that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 104 S.Ct. at 2068. A corollary principle for gauging trial strategy has been eruditely developed in *Porter v. State*, 682 S.W.2d 16 (Mo.App.1984). That corollary principle has been summarized.

> [W]here a claim of ineffective counsel is raised in a post-conviction proceeding and the attorney conduct involves the exercise of a choice in the presentation of the defense or the procedures selected in trial, the claim must fail if, within a wide range of reasonable professional assistance, the choice may be considered sound trial strategy. Of necessity, each case must be evaluated on its facts. A strong presumption of right action, however, severely limits such ineffective assistance

claims to the end that it will be the rare exception where a strategic choice is declared to have been unsound.

*Porter v. State, supra,* at 19. Also see *Love v. State,* 670 S.W.2d 499 (Mo. banc 1984). The third principle is stated by rule. "Appellate review shall be limited to a determination of whether the findings, conclusions, and judgment of the trial court are clearly erroneous." Rule 27.26(j); *Knee v. State,* 699 S.W.2d 104 (Mo.App. 1985).

The movant asserts his counsel was ineffective because he failed to offer documentary evidence as a defense to Counts I, IV, V and VI. The trial court separately considered and rejected that contention with respect to each count. Count I charged that the movant on May 23, 1980, falsely represented that he needed $240 to lease 24 acres of grassland from the railroad. Movant contends counsel should have offered a lease of 13 acres by the railroad dated January 19, 1981. The trial court noted the date of the lease and the fact it restricted the use of the premises to a salvage yard. It further noted Counts II and III charged that movant in June, 1980, obtained $1,900 by falsely representing the money was needed to purchase calves. Counsel concluded the lease of January 19, 1981, would have been proof there was no prospective lease on May 23, 1980, and no pasture for calves in June, 1980. The trial court found counsel's decision not to offer the lease was not ineffective assistance.

Count IV charged that on June 28, 1980, the movant falsely represented he needed $600 to purchase a truck. Count V charged that on July 3, 1980, movant falsely represented he needed $815 to purchase a pickup. Movant contends that in respect to these counts counsel should have introduced a certificate of title to a Dodge truck, a receipt for the purchase of a Ford truck, movant's cancelled check dated March 1, 1980, for $100 to Barton County Ford-Mercury and a receipt for the purchase of a Dodge truck. With the exception of the cancelled check, the exhibits filed with this court purportedly pertaining to a Dodge truck and a Ford truck are for all practical purposes illegible. They do not aid the movant.

The trial court found the statement of Barton County Ford-Mercury reflecting the movant's purchase of a Dodge truck was dated January 25, 1980. It also found a receipt indicating movant's purchase of a 1961 Ford truck (wrecker) was dated February 20, 1981. While not mentioned in these points, movant cites trial counsel's acknowledgement that a receipt signed by one Beestover dated June 28, 1980, would have shown a down payment of $50 upon the purchase of a truck. This was exhibit 4. He neglects to mention the receipt refers to the purchase of a 1953 GMC truck for $500, not the purchase of a Dodge or Ford truck. Movant also presented counsel with a receipt dated July 5, 1980, showing the payment of the balance of the purchase price for the GMC truck. Counsel concluded the documents presented to him pertaining to the movant's purchase of trucks would be of doubtful value. He based his judgment in part upon the discrepancies in amounts and dates. At the 27.26 hearing in respect to exhibits 4 and 5 he explained: "In other words, the first receipt showed only that he had paid $50, when the state charged he had borrowed $600 for that purpose. In Count V, the state charged that he had borrowed some amount of money to purchase another truck. The receipt I had showed that he had paid $450 on the first truck." The trial court found counsel's decision to conform to the mandated standard.

Count VI charged that on July 14, 1980, the movant misrepresented that he needed $1,000 for doctor and hospital expenses for a hernia operation. Movant contends counsel improperly failed to offer a patient record card of a physician which contained the following notation. "Patient seen with bilateral inguinal hernia, requires repair. Is to call for appt. CMD"

This contention must be considered in the light of Counts VII and VIII. Count VII

charged that on July 22, 1980, the movant misrepresented that he needed $1,234 for additional expenses for an operation for a *double* hernia. Count VIII charged that on July 23, 1980, movant misrepresented that he needed $210 for medicine as the result of a hernia operation. There was no evidence movant ever had such an operation. The trial court observed that a notation that only demonstrated the movant had a bilateral hernia would not establish movant's intent to use the money for its repair. The trial court concluded counsel was not ineffective in failing to offer the notation.

Movant's contentions must also be considered against the background of all the information available to trial counsel in making his recommendation concerning trial strategy. At the request of trial counsel for information to aid his defense, movant produced a host of documents. These included such items as utility bills and presumably the documents mentioned. 27.26 counsel for movant developed in general terms the fact trial counsel also had movant's written explanation or exculpatory statement in respect to each count. In the one specific instance further developed in evidence, it was demonstrated that movant's written explanation differed from an explanation compatible with the cited documents.

■ Following his review of the tendered documents, trial counsel sent to movant a letter which included the following. "I think it advisable you not take the stand, and not offer the papers you have provided into evidence.... Please advise if you disagree with this plan of trial, at once." The movant did not disagree with that plan. In fact, at trial he confirmed it by declining to testify. The advice given by trial counsel was within a wide range of reasonable professional assistance and the choices may be considered sound trial strategy. *Porter v. State, supra.* The findings and conclusions of the trial court that the services of trial counsel conformed to the care and skill of a reasonably competent attorney are not clearly erroneous. They are abun-

dantly supported by the evidence. The judgment is affirmed.

PREWITT, P.J., and HOGAN and FLANIGAN, JJ., concur.