

# Missouri Court of Appeals

## Southern District

### Division Two

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
vs. ) No. SD33357
)
JANICE A. LIVINGSTON-RIVARD, ) **Filed: May 20, 2015**
)
    Defendant-Appellant. )

APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY

Honorable Robert D. Schollmeyer

## AFFIRMED

Janice A. Livingston-Rivard ("Defendant") appeals from her conviction of one count of financial exploitation of the elderly. Defendant argues that there was insufficient evidence to support her conviction and that the trial court erred in overruling three hearsay objections Defendant made at trial. Defendant's claims are without merit, and her conviction and sentence are affirmed.

### Factual and Procedural Background

Aften Ambrose ("Victim") and his wife lived in a 1994 Belmont mobile home. Around 2005 or 2006 when Victim was in his 80s, Victim's health began to decline and he was diagnosed with dementia and Alzheimer's. On April 15, 2008, Victim attempted suicide by shooting himself and was hospitalized.

Upon his recovery, Victim returned home. Defendant, who was employed as a barmaid at a local VFW, then became involved in Victim's day-to-day life. One day, a next-door neighbor and friend of Victim, Angie Patterson, overheard a conversation between Defendant and Victim while at Victim's home. Defendant told Victim that he and his wife needed to transfer their property to Defendant so the state would not take it away when Victim and his wife had to enter a nursing home. On another occasion, Ms. Patterson encountered Victim with a large amount of cash in his possession. Ms. Patterson told Victim he should put the money in the bank. Victim responded that he did not want to put the money in the bank because Defendant would get it. In another conversation, Victim told Ms. Patterson he and his wife had nothing left because Defendant had taken it all. A nephew of Victim, Wayne Russell, stated Victim said he could not go to breakfast with Mr. Russell without Defendant's permission.

During that same time period, Victim began to dispose of his property. On July 13, 2008, Defendant purchased Victim's van for $100.00. On August 19, 2009, Victim gave Defendant the 1994 Belmont mobile home. On October 11, 2009, Victim gave Defendant a 1968 Ford automobile.

When Mr. Russell questioned Defendant about these transfers, Defendant advised him she was a state employee who had been appointed to take care of Victim and Victim's wife. When a nun attempted to contact Victim regarding proceeds from the estate of Victim's deceased sister, Defendant also told the nun that Defendant was a state employee taking care of Victim and his wife.

Mr. Russell, whose investigation revealed there had been no such appointment of Defendant as a caretaker, sought and obtained guardianship over Victim and Victim's wife.  Victim died in 2011.

Defendant was subsequently charged with two counts of financial exploitation of the elderly under § 570.145.[1]  Defendant waived her right to a trial by jury and had a bench trial.

The trial judge found Defendant guilty of financially exploiting Victim but not guilty of financially exploiting Victim's wife.  The trial court sentenced Defendant to serve 15 years in the Missouri Department of Corrections but suspended execution of the sentence and placed Defendant on five years probation.  Defendant appeals.

## Discussion

For ease of analysis, we take Defendant's points out of order.  First, we will address Defendant's claims of evidentiary error.

### *Point II, Point III, and Point IV:  Hearsay*

In these points, Defendant challenges the admission of the testimony regarding Victim's statements to Mr. Russell and Ms. Patterson.  Defendant argues the statements were hearsay.  This argument is without merit.

This Court reviews trial court rulings regarding the admissibility of evidence for an abuse of discretion.  ***State v. Winfrey***, 337 S.W.3d 1, 5 (Mo. banc 2011).  "The trial court abuses its discretion when its ruling is 'clearly against the logic of the circumstances and is so unreasonable as to indicate a lack

---

[1] All statutory references are to RSMo Cum. Supp. (2007).

3

of careful consideration.'" ***Id.*** (quoting ***State v. Gonzales***, 153 S.W.3d 311, 312 (Mo. banc 2005)).

Defendant's arguments regarding Victim's statements are without merit because the statements were not offered for their truth. "Hearsay evidence is in-court testimony regarding an out-of-court statement used to prove the truth of the matter asserted therein that derives its value from the veracity of the out-of-court statement." ***State v. Newsom***, 299 S.W.3d 784, 788 (Mo. App. S.D. 2009). Generally speaking, such statements are not admissible. ***Winfrey***, 337 S.W.3d at 6. "However, if an out-of-court statement is not admitted to prove the truth of the matter asserted, but for some other purpose that is independently relevant without reference to the truthfulness of the statement, then the statement is non-hearsay." ***Id.*** *See also* ***State v. McIntosh***, 635 S.W.2d 370, 371-72 (Mo. App. W.D. 1982); ***State v. Harris***, 571 S.W.2d 443, 446 (Mo. App. St. L. D. 1978).

Here, Victim's statements to Mr. Russell and Ms. Patterson were not hearsay because they were not offered to prove the truth of the statements. The statement made to Mr. Russell by Victim asserted Victim needed Defendant's permission in order to go to breakfast with Mr. Russell. However, the statement's probative value did not depend on whether Victim actually needed permission to go to breakfast. Rather, the mere fact that Victim made and evidently believed the statement tended to show Defendant's influence over Victim. Victim's first statement to Ms. Patterson asserted Defendant would get Victim's money if Victim put it in the bank. Again, the statement tends to show Defendant's influence over Victim regardless of whether or not it was true.

4

Finally, Victim's second statement to Ms. Patterson asserted Defendant had obtained all of Victim's property.  But again, the prosecution offered the statement not to prove that Defendant had actually obtained possession of Victim's property—the prosecution did that through its exhibits showing Victim's "gifts" to Defendant—but rather to show Defendant's influence over Victim.  As the statements were not hearsay, the trial court did not abuse its discretion when it overruled Defendant's objections.

Defendant's second, third, and fourth points are denied.

### Point I:  Sufficiency of the Evidence

In her first point, Defendant argues the trial court erred in denying her motion for judgment of acquittal because the State failed to prove Defendant made a misrepresentation which caused Victim to transfer his property to Defendant.  This argument is without merit.

"The appellate court reviews the sufficiency of the evidence in a court-tried criminal case by applying the same standard used in a jury-tried case." *State v. Holman*, 230 S.W.3d 77, 82 (Mo. App. S.D. 2007).  That is, the issue is whether "any rational fact-finder 'could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Nash*, 339 S.W.3d 500, 509 (Mo. banc 2011) (quoting *State v. Bateman*, 318 S.W.3d 681, 687 (Mo. banc 2010)).  In conducting this review, "[t]he credibility and weight of testimony are for the fact-finder to determine." *Holman*, 230 S.W.3d at 83.  "The fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* (quoting *State v. Crawford*, 68 S.W.3d 406, 408 (Mo. banc 2002)).  "[T]he Court does not act as

5

a 'super juror' with veto powers, but gives great deference to the trier of fact."

***Nash***, 339 S.W.3d at 509 (quoting ***State v. Chaney***, 967 S.W.2d 47, 52 (Mo. banc 1998)).  Thus, "[t]he Court is required to take the evidence in the light most favorable to the State and to grant the State all reasonable inferences from the evidence." ***Holman***, 230 S.W.3d at 83 (quoting ***State v. Whalen***, 49 S.W.3d 181, 184 (Mo. banc 2001)).  "The Court disregards contrary inferences[.]" ***Id.*** (quoting ***Whalen***, 49 S.W.3d at 184).

Defendant was charged and convicted under Section 570.145.  That section provides that:

> A person commits the crime of financial exploitation of an elderly or disabled person if such person knowingly by deception, intimidation, undue influence, or force obtains control over the elderly or disabled person's property with the intent to permanently deprive the elderly or disabled person of the use, benefit or possession of his or her property thereby benefiting such person or detrimentally affecting the elderly or disabled person.

§ 570.145.1.  Defendant does not contest that Victim met the statutory definition of elderly or that Defendant did obtain Victim's property.  The issue in this case is whether Defendant's statements met the definition of "deception, intimidation, undue influence, or force[.]"  The statute defines deception as follows:

> a misrepresentation or concealment of material fact relating to the terms of a contract or agreement entered into with the elderly or disabled person or to the existing or preexisting condition of any of the property involved in such contract or agreement, or the use or employment of any misrepresentation, false pretense or false promise in order to induce, encourage or solicit the elderly or disabled person to enter into a contract or agreement.

§ 570.145.2(1).

There is no reported Missouri case addressing the issue of what constitutes sufficient evidence to support a conviction under this statute.  However, similar

crimes have long been prosecuted under general theft statutes. *See, e.g.*, ***State v. Crow***, 487 S.W.2d 461 (Mo. 1972); ***State v. Davis***, 675 S.W.2d 652 (Mo. App. S.D. 1984) (overruled on other grounds by ***State v. Carson***, 941 S.W.2d 518, 520 (Mo. banc 1997)). In such cases, even where the victim cannot testify, the courts will find sufficient evidence to support the conviction where there is evidence of a false statement in connection with a transaction in which the victim transferred property to the defendant. *See **Crow***, 487 S.W.2d at 464-65.

Here, there was evidence from which a rational finder of fact could reasonably infer Defendant made a misrepresentation which induced Victim to give Defendant substantial property for either none or very little consideration. Ms. Patterson overheard a conversation in which Defendant said Victim and his wife should transfer all their property to Defendant so the state would not confiscate the property when Victim and his wife had to go to a nursing home. Furthermore, Defendant told both Mr. Russell and Ms. Patterson and a nun that Defendant had been appointed by the state to take care of Victim and his wife. A jury could have inferred that Defendant made such statements to Victim to deceive him.

The falsity of Defendant's statements can be inferred from the fact that Defendant never provided documentation that she had been appointed by the state and that Mr. Russell was able to obtain a guardianship over Victim and Victim's wife. Victim's reliance can be inferred from the fact that Victim and his wife transferred two vehicles and their home to Defendant for a total of $100 consideration. This evidence is sufficient such that a reasonable trier of fact

7

could infer Defendant made a misrepresentation which induced Victim to enter into an agreement to transfer his property to her.

Defendant argues Ms. Patterson's testimony regarding Defendant's statement to Victim is not sufficient to support the conviction because Ms. Patterson could not remember whether Defendant was talking to Victim or to Victim's wife.  However, nothing in the statute requires that the misrepresentation be made directly to the victim.  The statute simply requires that the defendant obtain control over property "by deception, intimidation, undue influence, or force[.]"  § 570.145.1.  The plain meaning of this language requires proof that deception was used, not necessarily that the defendant lied directly to the victim.  *See **People v. Owsley***, 996 N.E.2d 118, 125 (Ill. App. 2013) (finding sufficient evidence of deception under Illinois's financial exploitation of the elderly statute where the defendant lied to lawyers and bank officials regarding transactions the victim completed).  Based on the circumstances of this case, a fact-finder could reasonably infer that Defendant's statements, whether made to Victim or Victim's wife or to Victim's family and friends, were used to help deceive Victim and to enable Defendant to obtain the property.

There was sufficient evidence to support Defendant's conviction. Defendant's first point is denied.

**<u>Decision</u>**

The trial court's judgment is affirmed.


MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

DON E. BURRELL, J. – CONCURS