

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,      )
                                       )

         Plaintiff-Respondent,      )
                                       )

vs.                                  )          No. SD35889
                                       )

DEION D. MARTIN,          )          **Filed: September 10, 2020**
                                       )

         Defendant-Appellant.      )

APPEAL FROM THE CIRCUIT COURT OF NEW MADRID COUNTY

Honorable Fred W. Copeland, Circuit Judge

**<u>AFFIRMED</u>**

Following a bench trial, the trial court found Deion D. Martin ("Defendant") guilty of murder in the first degree, robbery in the first degree, and two counts of armed criminal action, and sentenced Defendant to imprisonment for life without parole for the murder and concurrent terms of imprisonment for the other offenses. Defendant appeals, and raises two points – (1) the statute under which he was found guilty of murder and sentenced to imprisonment for life without parole violated the Eighth Amendment and Missouri Constitution's prohibitions on cruel and unusual punishment as applied to him in that he was only nineteen at the time of the murder and the law applicable to offenders

who are less than eighteen at the time of their offense should be extended to him; and (2) the evidence was insufficient to permit a reasonable fact-finder to find that Defendant caused the death of the murder victim "after deliberation" upon the matter. We reject each of these points, and affirm the trial court's judgment.

**Facts and Procedural History**[1]

Defendant was charged with (1) murder in the first degree in that he "after deliberation, knowingly caused the death of Brenda Smith by shooting her" on or about May 15, 2015; (2) robbery in the first degree in that he "forcibly stole lottery tickets in the possession of Helen Shephard, and in the course thereof [he] was armed with a deadly weapon;" and (3) two counts of armed criminal action for committing the murder and robbery "by, with and through, the knowing use, assistance and aid of a deadly weapon."

In September 2018, Defendant waived his right to a jury trial "in exchange for" the State "withdrawing" its notice of its intention to seek the death penalty. The following month, Defendant filed a motion to dismiss the charge of murder in the first degree on the ground that the only permitted sentence for that offense in this case was life without parole, and a life without parole sentence would violate the Eighth Amendment's prohibition on cruel and unusual punishment because Defendant was nineteen at the time of the offense. The trial court denied the motion one week later at a pre-trial conference on the first morning of trial.[2]

---

[1] We view the evidence in the light most favorable to the trial court's findings in accordance with our standard of review for Defendant's second point; however, we occasionally include other evidence where necessary to provide context for Defendant's points.

[2] Defendant renewed the motion to dismiss at sentencing when it again was denied.

*Trial Evidence Relevant to Defendant's Deliberation*

Shortly before six a.m. on Monday, May 18, 2015, Brenda Smith and Helen Shepard opened the convenience store where they were employed for business. The convenience store was located in New Madrid County. Both women "walked up to the door, unlocked it, walked in," and before they could close and lock the door, a male "with [a] mask over his nose, and [a] gun in his hand" walked in behind them. The gun was a revolver. Once inside, the male told the women "to hurry up and give him the money." Ms. Smith told the robber "we couldn't, that we hadn't even been in the store to get the money out of the safe." The robber was holding the gun "[u]p to [the] right side of [Ms. Smith's] head." Ms. Shephard testified:

> [The robber repeated] hurry up and give us [sic] some money and [Brenda] said I can't, and [the robber] said hurry up and give me the money or I'm gonna shoot you. And Brenda said you might as well shoot me because I can't [open the safe in a hurry], and that's when he shot her.

A "[g]unshot wound to the head" caused Ms. Smith's death. The entrance wound to Ms. Smith's head was from "near contact" between the muzzle and Ms. Smith's head. At some point before the robber shot Ms. Smith, the store's "alarm system [went] off."

The robber "started to walk out the door," but then "turned towards [Ms. Shepard] . . . and . . . c[a]me back and . . . said you get the money for me." Ms. Shepard told the robber "I can't, because I couldn't open the safe. I didn't know how." The robber told Ms. Shepard "he would shoot [her] too," and then began "pushing [her] back towards the back where the safe was." Ms. Shepard "guess[es]" she "finally convinced" the robber that she could not open the safe because the robber said "then, get me some lottery tickets." Ms. Shepard "started ripping off the lottery tickets and handing them to" the

robber until the robber told her "[t]hat was enough."[3]  During this period, the robber was "point[ing]" the gun at Ms. Shephard.  The robber then left the store "out the front door," and Ms. Shephard called 911.[4]

On May 24, 2015, Defendant attempted to redeem a lottery ticket at two separate convenience stores in Stoddard County.  An employee at the first convenience store declined to redeem the ticket because the lottery terminal showed the ticket as rejected, but returned the ticket to Defendant.  An employee at the second convenience store also declined to redeem the lottery ticket because the lottery terminal showed the ticket as rejected, but tore the ticket in half before returning the ticket to Defendant.  Another employee at the second convenience store called the police.[5]

After attempting to cash in the lottery ticket, Defendant's girlfriend drove Defendant to St. Louis where they met a female friend, and went to Grant's Farm.[6] Defendant was arrested at Grant's Farm.  In a recorded,[7] post-*Miranda*[8] interview,

---

[3] The type and serial numbers of the lottery tickets taken in the robbery were reconstructed from the store's records and the lottery tickets remaining at the store.  Though the transcript contains what appear to be errors, it appears nineteen lottery tickets were taken in the robbery with law enforcement ultimately recovering seventeen of those tickets.

[4] Surveillance video from the store captured Ms. Shepard calling 911, but did not capture the shooting.

[5] A law enforcement officer who responded to the convenience store employee's call identified the person who attempted to redeem the "rejected" lottery ticket as Defendant from the store's surveillance video of the event.

[6] On being approached by police officers at Grant's Farm, Defendant's girlfriend, who intentionally had separated herself physically from Defendant at the urging of her family in text messages and phone calls, consented to a search of her car.  In the course of the search, officers found a lottery ticket "torn in half" "[i]n the front passenger side" of the car, and found eight additional lottery tickets in a bag that Defendant had placed in the trunk that morning.  Though the transcript contains what appear to be errors, the serial number of each of the lottery tickets found in the car appears to have matched the serial number of a lottery ticket taken in the robbery during which Ms. Smith was shot and killed.

[7] A portion of the recording was admitted into evidence and played for the trial court, but that portion was not transcribed.

[8] *Miranda v. Arizona*, 384 U.S. 436 (1966).

4

Defendant told the interviewing law enforcement officers that (1) he shot Ms. Smith; (2) he left his house about 5:15 a.m. and "camped out" near the convenience store about 5:30 a.m. waiting for the store to open at six; (3) he obtained the weapon used to shoot Ms. Smith by taking the weapon from his stepfather's closet the Thursday before the robbery and shooting on Monday; (4) the weapon currently was in Defendant's closet; and (5) Defendant was not mad when he shot Ms. Smith, but thought it "would be easier with one person."[9]

*Trial Court's Findings and Sentencing*

The trial court found Defendant guilty beyond a reasonable doubt of murder in the first degree, robbery in the first degree and each of the associated armed criminal action offenses. The trial court subsequently sentenced Defendant to imprisonment for life without the possibility of parole for the offense of murder in the first degree (the only sentence permitted in the circumstances of this case), thirty years in prison for the offense of robbery in the first degree, and ten years in prison for each of the associated armed criminal action offenses.

---

[9] In a search of Defendant's residence pursuant to a warrant, law enforcement officers seized (1) a .22 caliber revolver with one empty chamber in the cylinder in a cardboard box in Defendant's bedroom closet; (2) a total of eight lottery tickets in a "Fiber One box" and in a wooden box in the same closet; and (3) a "darkish green colored hoodie" with a name and number on the back (that would not be visible if the hoodie were turned inside out), and a "black scarf" in Defendant's bedroom. Though the transcript contains what appear to be errors, the serial number of each lottery ticket found in the two boxes appears to have matched the serial number of a lottery ticket taken in the robbery.

Defendant testified at trial and denied that he shot Ms. Smith. Defendant testified that an acquaintance requested his help to commit a robbery. Defendant agreed to help the acquaintance because Defendant was "frightened" of the acquaintance's uncle who Defendant believed was a gang member. Defendant provided the acquaintance with a gun and a bag and acted as a lookout, but did not go into the convenience store. Following the robbery, the acquaintance returned the gun to Defendant and also gave Defendant lottery tickets taken in the robbery to "cash" for the acquaintance "because he wasn't old enough." Defendant turned nineteen in April 2015.

5

**Analysis**

*Point I – Sentence of Life Without Parole for Offender Who Was Nineteen at the Time of the Offense Does Not Violate the Eighth Amendment or Missouri Constitution*

In his first point, Defendant claims that the trial court erred in denying his motion to dismiss the charge of murder in the first degree because section 565.020, RSMo 2000, the statute that defined that offense and required a punishment of imprisonment for life without parole in Defendant's circumstances, violated the Eighth Amendment and Missouri Constitution's prohibitions on cruel and unusual punishment as applied to Defendant in that Defendant was only nineteen at the time of the murder and the law applicable to offenders who are less than eighteen at the time of their offense should be extended to him. Defendant states that he "raises this claim for purposes of preservation in the event the jurisprudence in this area evolves."

Ordinarily our Supreme Court has "exclusive appellate jurisdiction in all cases involving the validity . . . of a statute . . . of this state" pursuant to MO. CONST. article V, section 3. However, this Court has appellate jurisdiction where the challenge to the validity of a state statute is rendered "merely colorable" rather than "real and substantial" because our Supreme Court previously has addressed the challenge. *In the Interest of D.E.G. v. Juvenile Officer of Jackson County*, 601 S.W.3d 212, 215 n.2 (Mo. banc 2020). As a result, we have appellate jurisdiction of the claim asserted in Defendant's first point because our Supreme Court recently addressed and rejected an identical claim in *State v. Barnett*, 598 S.W.3d 127 (Mo. banc 2020), rendering Defendant's claim merely colorable rather than real and substantial.[10]

---

[10] The Supreme Court issued its opinion in *Barnett* on April 14, 2020, which was the date that Defendant filed his brief in this appeal.

6

In ***Barnett***, the Supreme Court held (1) that the prohibitions against cruel and unusual punishment under the Eighth Amendment and the Missouri Constitution did not prohibit sentences of imprisonment for life without parole for two murders in the first degree under section 565.020, RSMo 1994, based solely on the fact the offender was nineteen at the time of the offenses, and (2) that the law applicable to offenders who are less than eighteen at the time of their offense should not be extended to Defendant judicially.[11] ***Id.*** at 133. Defendant's first point is denied.

*Point II – Evidence Was Sufficient to Permit a Reasonable Fact-Finder to Find Deliberation Beyond a Reasonable Doubt*

In his second point, Defendant asserts that the evidence was insufficient to permit a reasonable fact-finder to find beyond a reasonable doubt that Defendant caused the death of Ms. Smith "after deliberation" upon the matter. We disagree and deny Defendant's point.

Standard of Review

"To determine whether the evidence presented was sufficient to support a conviction and to withstand a motion for judgment of acquittal,[12] this Court does not weigh the evidence but rather accept[s] as true all evidence tending to prove guilt together with all reasonable inferences that support the verdict, and ignore[s] all contrary evidence and inferences." *State v. Ess*, 453 S.W.3d 196, 206 (Mo. banc 2015) (internal quotations omitted). This Court, however, "may not supply missing evidence, or give the [state] the benefit of unreasonable, speculative or forced inferences." *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001) (internal quotations omitted). Evidence is sufficient to support a conviction when "there is sufficient evidence from which a reasonable

---

[11] Section 565.020, RSMo 1994, was recodified without change in 2000, and remained unchanged through the date of Defendant's offenses in May 2015.

[12] Both issues are analyzed under the same standard of review. ***State v. Browning***, 357 S.W.3d 229, 233 (Mo.App. S.D. 2012). In this appeal, Defendant challenges the trial court's denial of his motion for judgment of acquittal at the close of the State's evidence. We also note that "we review the sufficiency of the evidence to support a criminal conviction on the merits without regard to whether or how that issue was raised at trial." ***State v. Shaddox***, 598 S.W.3d 691, 695 n.4 (Mo.App. S.D. 2020) (internal citation omitted).

7

[fact-finder] might have found the defendant guilty beyond a reasonable doubt." *State v. Coleman*, 463 S.W.3d 353, 354 (Mo. banc 2015); *see also Musacchio v. United States*, —— U.S. ——, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016).

*State v. Clark*, 490 S.W.3d 704, 707 (Mo. banc 2016) (brackets in original except for footnote). Further, "[i]nferences contrary to the verdict are disregarded 'unless they are such a natural and logical extension of the evidence that a reasonable juror would be unable to disregard them.' *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993)." *State v. Kopp*, 325 S.W.3d 466, 467, 471 n.6 (Mo.App. S.D. 2010). And, a jury may draw inferences "from their common sense and life experiences." *State v. Johnson*, 461 S.W.3d 842, 845 (Mo.App. E.D. 2015).

This standard of review applies both to cases tried to a jury and to cases tried to the court. *State v. Livingston-Rivard*, 461 S.W.3d 463, 466 (Mo.App. S.D. 2015); *State v. Mitchell*, 203 S.W.3d 246, 249 (Mo.App. S.D. 2006); Rule 27.01(b), Missouri Court Rules (2020) (in a criminal case tried to the court, the trial court's "findings shall have the force and effect of the verdict of a jury").

Discussion

Section 565.020.1, RSMo 2000, provides "[a] person commits the crime of murder in the first degree if he knowingly causes the death of another person after deliberation upon the matter." And, section 565.002(3), RSMo 2000, provides that "'[d]eliberation' means cool reflection for any length of time no matter how brief."

"Direct proof of a required mental state is seldom available, and the mental state may be proved by indirect evidence and inferences reasonably drawn from the circumstances surrounding the slaying." *State v. Perkins*, 600 S.W.3d 838, 847 (Mo.App. E.D. 2020) (internal quotations and citations omitted).

> "Deliberation is not a question of time -- an instant is sufficient -- and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan*, 404 S.W.3d 253, 266 (Mo. banc 2013). "Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Id*. . . .
>
> . . . .
>
> Evidence that a defendant did or said certain things prior to the act in order to facilitate the crime, also known as "planning evidence," is conduct relevant to deliberation. *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D. 2007) (citing *State v. Roberts*, 948 S.W.2d 577, 589 (Mo. banc 1997)). . . .

*State v. Shaddox*, 598 S.W.3d 691, 695-96 (Mo.App. S.D. 2020). In addition,

"[b]ringing a gun to a crime scene supports a finding of deliberation" because the fact-

finder reasonably could infer the defendant brought the gun because he had "the

deliberate purpose of using the gun during [the crime] if necessary." *Perkins*, 600

S.W.3d at 847. Finally, "[h]aving ample opportunity to terminate the crime prior to the

killing," and "a lack of concern for and a failure to attempt to aid the victim" each

independently supports an inference of deliberation. *Id.* (internal quotations and citations

omitted); *Shaddox*, 598 S.W.3d at 696 (similar statement of law).

In this case, the evidence, viewed in accordance with our standard of review,

established that Defendant (1) planned the robbery; (2) obtained a handgun on the

Thursday before the robbery on Monday; (3) brought that handgun to the convenience

store where he "camped out" while waiting for the store to open at six a.m.; (4) walked

into the store with the handgun in his hand before Ms. Smith and Ms. Shepard could

relock the door; (5) demanded that the women "hurry up and give him the money" after

which the women told him they could not because they had not yet retrieved the money

from the store's safe; (6), while holding the handgun "[u]p to [the] right side of [Ms.

Smith's] head," again demanded that the women "hurry up" and give him money, was told by Ms. Smith "I can't," again demanded "hurry up and give me the money or I'm gonna shoot you;" (7) promptly followed through on his stated intention by shooting Ms. Smith in the head after she told him "you might as well shoot me because I can't" open the safe in a hurry; (8) showed no concern for, and did not attempt to aid, Ms. Smith; and (9) told law enforcement he was not mad when he shot Ms. Smith, but thought it "would be easier with one person." This evidence clearly is sufficient to permit a reasonable fact-finder to find beyond a reasonable doubt that in shooting Ms. Smith Defendant "acted deliberately, consciously and not reflexively."

Defendant's second point is denied, and the trial court's judgment is affirmed.

Nancy Steffen Rahmeyer, P.J. – Opinion Author

Daniel E. Scott, J. – Concurs

William W. Francis, Jr., J. – Concurs